In the Matter of Cancellation of Contract for Deed between Clayton J. DIEMERT and Florence M. Diemert, Vendors/Appellees,

v.

Kenneth L. JOHNSON and Laurel L. Johnson, Vendees/Appellants.

Civ. No. 9784.

Supreme Court of North Dakota.

Oct. 27, 1980.

Stephan & Stephan, Valley City, for vendors/appellees; argued by L. A. W. Stephan, Valley City.

Paulson & Simonson, Valley City, for vendees/appellants; argued by Mikal Simonson, Valley City.

SAND, Justice.

This is an appeal from a judgment cancelling a contract for deed between the vendors, Clayton and Florence Diemert, and the vendees, Kenneth and Laurel Johnson, and dismissing the Johnson's counterclaim seeking rescission of the contract on the basis of fraud.

The Diemerts sought to cancel the contract for deed for the sale of property known as Scotty's Kampsite near Eckelson, North Dakota. The property was sold by the Diemerts through an agent, Lloyd Lorenz, of Devils Lake, North Dakota. Lorenz was a real estate agent with Heritage Realty of Fargo and also a schoolteacher at Devils Lake with the Johnsons. Lorenz handled negotiations for the Diemerts with the Johnsons. An earnest money agreement was signed by the Johnsons on 11 April 1978, and by the Diemerts on 12 April 1978. A contract for deed was signed by the parties on 30 May 1978. By the terms of the contract, the Johnsons agreed to pay $98,000 for Scotty's Kampsite, with a down payment of $18,000, and the balance of $80,000 to be paid at the rate of $5,196.00 every six months, with the first payment to be made on 1 April 1979.

The Johnsons defaulted on the 1 April 1979 payment, and on 19 July 1979 the Diemerts gave notice of their election to cancel and terminate the contract pursuant to the statutory procedures of Chapter 32–18, North Dakota Century Code. Pursuant to § 32–18–06, NDCC,[1] the Johnsons moved to enjoin the cancellation of the contract for deed and to require all further proceedings to be held in the district court. In support of this motion, the Johnsons filed an affidavit which alleged a counterclaim of fraud in procuring the Johnsons' consent.

The pertinent part of the Johnsons' affidavit is as follows:

"That as an inducement to buy said land, affiants [Johnsons] were told by vendors [Diemerts] that the billboards would not have to be removed . . . .

"That vendors knew that said billboards had to be removed and were not under a grandfather clause and fraudulently misrepresented this fact to affiants.

"That affiants, in reliance on and as a result of fraudulent misrepresentation by vendors, entered into said Contract for Deed."

The district court enjoined the Diemerts from cancellation of the contract by notice and the matter was heard before the district court. The district court, in a memorandum decision dated 5 Feb 1980, dismissed the Johnsons' counterclaim for rescission because they had not met their burden of proof, and the court entered judgment on 29 Feb. 1980 cancelling the contract. The Johnsons appealed from that judgment to this Court. We reverse and remand for a new trial.

■ Both parties stipulated that the affidavit filed by the Johnsons on their motion and the answering affidavit by the Diemerts constituted the pleadings in the action before the district court. Rule 3 of the North Dakota Rules of Civil Procedure provides that "A civil action is commenced by the service of a summons." and Rule 7, NDRCivP, provides that pleadings shall consist of "a complaint and an answer." The requirements of Rules 3 and 7, NDRCivP, have not been met in the instant case. However, because the action was pursuant to the statutory proceedings and because the statute was complied with, this

1. Section 32–18–06, NDCC, provides as follows:

"When it shall be made to appear by affidavit of the vendee or purchaser, or his assigns, agent, or attorney to the satisfaction of a judge of the district court of the county where the property is situated, that the vendee or purchaser, or his assigns, has a legal counterclaim or any other valid defense against the collection of the whole or any part of the amount claimed to be due on such contract, such judge, by an order to the effect, may enjoin the vendor or his successor in interest from the cancellation of such contract by notice and may direct that all further proceedings for the cancellation be had in the district court properly having jurisdiction of the subject matter, and, for the purpose of carrying out the provisions thereof, service may be made upon the vendor or his assigns or upon his attorney or agent."

defect is not fatal to our consideration of this case. Nevertheless, we do make the observation that the time may be appropriate for the Legislature to eliminate statutory proceedings and to require a summons and complaint in all civil proceedings.

As to fraud alleged in the counterclaim, § 9–03–08, NDCC, provides as follows:

"Actual fraud within the meaning of this title consists in any of the following acts committed by a party to the contract, or with his connivance, with intent to deceive another party thereto or to induce him to enter into the contract:

1. The suggestion as a fact of that which is not true by one who does not believe it to be true; ·

2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true though he believes it to be true;

3. The suppression of that which is true by one having knowledge or belief of the fact;

4. A promise made without any intention of performing it; or

5. Any other act fitted to deceive."

Actual fraud is always a question of fact. Section 9–03–10, NDCC.

▆▆▆ The scope of review of the trial court's findings on an appeal to this Court from a case tried without a jury is limited by Rule 52(a), NDRCivP, which provides in part:

"Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."

However, this Court is not bound by such findings when they are based on an erroneous conception of the law. *Adams v. Little Missouri Minerals Association*, 143 N.W.2d 659 (N.D.1966).

The trial court's findings of fact with respect to the alleged fraud are conclusory statements and do not provide us with a sufficient basis to determine the trial court's considerations in determining whether or not there was actual fraud. Consequently, we must also look to the memorandum decision to clarify the findings.

▆▆▆ Our review of both the findings of fact and the memorandum decision leads us to conclude that the trial court's decision was based on an erroneous conception of law. The memorandum decision sets out the elements of fraud considered by the trial court. The elements considered include that:

"... a representation was made as a statement of fact, which was untrue and known to be untrue by the vendors, with intent to deceive for the purpose of inducing the vendees to act upon it, and that the vendees did in fact rely upon it and were induced to so act upon it to their injury and damage."

Based on this statement of the elements of fraud, there is no indication whether or not the trial court considered anything other than the making of positive false statements by the Diemerts. However, there can be fraud without the making of a positive false statement. *Stude v. Madzo*, 217 N.W.2d 5 (N.D.1974). This issue should have been resolved on the record. The record reflects that the Diemerts knew that the signs did not come within the grandfather exemption of the law.[2] There was conflicting testimony as to whether or not the Diemerts made a positive false statement to the Johnsons about the signs. However, certain facts regarding the nonconformity of the signs were not made known by the Diemerts or their agent to the Johnsons. These signs may play an

---

2. There was correspondence concerning the signs between the Diemerts and the State Highway Department in 1974. Robert Jessie, an agent for the State Highway Department, testified that he had contacted Mr. Diemert by a letter dated 25 Apr 1974 concerning the nonconformity of the signs. Diemert acknowl-

edged receipt of the letter, which stated that none of the signs were in conforming areas. Diemert testified that he went to Bismarck to see "somebody up at the Highway Department" about the signs. Diemert also testified that he was contacted "once or twice" more after that date about the signs.

important role in the business involved here and the withholding of the information regarding the nonconformity of the signs may have been a significant factor in the purchase which should have been determined by the court.

The Diemerts assert that the Johnsons should not be able to argue fraud by the suppression of a material fact because the Johnsons did not allege it in their affidavit and it was not brought up at trial.

 The suppression of a material fact, which a party is bound in good faith to disclose, is equivalent to a false representation. *Verry v. Murphy*, 163 N.W.2d 721 (N.D.1969). We believe that the term "fraudulent misrepresentation" used in the affidavit is broad enough to cover both positive false statements and the suppression of facts. Thus the suppression of facts was before the trial court and should have been considered.

Additionally, the record does not reveal whether or not the trial court considered the principal–agent relationship between the Diemerts as principal and Lorenz as agent, and the general rule of law that the principal is generally held liable for statements made by the agent acting within the apparent scope of authority. 3 Am. Jur.2d, Agency, § 264, at 628. See *J. R. Watkins Co. v. Vangen*, 116 N.W.2d 641, 649 (N.D.1962). The findings of fact and the memorandum decision reflect that there was an agency relationship between Lorenz and the Diemerts. The trial court should have considered the agency relationship, and the binding effect of any statements made by Lorenz in his capacity as Diemerts' agent to the Johnsons concerning the signs.

We believe the failure of the trial court to consider the suppression of facts and the principal–agent relationship was error. Accordingly we reverse the trial court's decision and remand the case for a new trial.

ERICKSTAD, C. J., and VANDE WALLE and PEDERSON, JJ., concur.

GLASER, District Judge, dissenting.

I dissent from this decision insofar as it orders a new trial. The appellant has made no claim that evidence was improperly excluded or that there exists newly discovered evidence. The case should be remanded for reconsideration by the trial court, rather than forcing the parties into the unnecessary, expensive, and time–consuming process of a second trial.