**Wendell YOUNG, Plaintiff and Appellant,**

v.

**Ella HAMILTON, Charles Hamilton, May Overby Estate, Oliver Schweigert, Sebastian Wald, Leo Wald, Allan Wald, and Patrick Wald, Defendants and Appellees.**

**Civ. No. 10229.**

Supreme Court of North Dakota.

March 30, 1983.

238

Hjellum, Weiss, Nerison, Jukkala & Wright, Jamestown, and Young & Martin, Denver, Colo., for plaintiff and appellant; argued by James R. Young, Denver, Colo.

Gordon O. Hoberg, Napoleon, for defendants and appellees Ella Hamilton, Charles Hamilton, Sebastian Wald, Leo Wald, Allan Wald and Patrick Wald; argued by Gordon O. Hoberg, Napoleon.

Kessel, Splitt & Kessel, LaMoure, for defendants and appellees Oliver Schweigert and May Overby Estate; argued by Ronald G. Splitt, LaMoure.

SAND, Justice.

The plaintiff, Wendell Young, appealed from a judgment denying his claim for

monetary damages and injunctive relief, or in the alternative for an order requiring the defendants[1] to provide a suitable outlet for water cast and confined upon Young's land as a result of the defendants' actions in discharging drainage water onto his land and obstructing and interfering with the natural flow of water.

The location of the land involved in this lawsuit with a corresponding designation for the appropriate parties is as follows:

The elevation of the land is such that the natural drainage of water follows the arrows on the diagram.

Young brought an action against the defendants alleging, in substance, that since 1966 he owned and farmed a certain quarter section of agricultural land in LaMoure County, North Dakota, which had a natural depression in the northeast corner; that the individual defendants owned or leased certain land with a combined watershed of over 700 acres adjacent to or near his quarter section; that numerous ponds, sloughs, and depressions existed on the land owned, leased, or occupied by the defendants; that the natural depression on his land was at a lower elevation than the ponds, sloughs, and depressions on the defendants' land; that between 1967 and 1974 the defendants severally and, in some instances, jointly constructed a series of drainage ditches from the numerous natural ponds, sloughs, and depressions on their land resulting in water unreasonably draining into the natural depression on his land; that the defendants severally and, in some instances, jointly constructed ditches for the purpose of artificially diverting and draining surface waters which otherwise would be contained in the ponds, sloughs, and depressions, but instead drained in unnatural and unreasonable quantities onto and across his land; that, as a result of the defendants' conduct, his land and crops have been flooded and damaged and decreased in value and farming operations have become more difficult, costly, and time-consuming; that he could not use his land as it had been used, and, if such draining continued, large portions of his land would become useless for agriculture or any other purpose; that certain defendants constructed or permitted to be constructed a levee on the east Overby land adjacent to the natural depression on his land, and the levee prevented drainage of water from his land to the east Overby land and caused unnatural flooding on his land surrounding the natural depression because the water was not allowed to seek its own level uninhibited by the levee; and that the defendants drained ponds, sloughs, or lakes in violation of North Dakota Century Code § 61–01–22. Young's prayer for relief sought $20,000.00 actual damages; $100,000.00 exemplary damages; and an order enjoining the defendants from discharging drainage waters on and across his land and requiring the defendants to refill the artificially constructed ditches, or in the alternative to provide a suitable outlet over the east Overby land and to a creek for water cast upon his land.

The defendants answered and generally denied the allegation in Young's complaint.

After a bench trial during which the judge viewed the area in question, the court issued a memorandum opinion and findings of fact, conclusions of law, and order for

---

1. The named defendants are Ella Hamilton, Charles Hamilton, Oliver Schweigert, Sebastian Wald, Leo Wald, Allan Wald, Patrick Wald and the May Overby Estate. For purposes of this opinion, these parties will be referred to solely as the defendants unless the designation as individual parties would be more appropriate.

judgment. A judgment in favor of the defendants was entered and Young appealed.

The resolution of the issues raised by Young essentially require us to determine if our statutory law set forth in NDCC § 61–01–22 and case law as developed in *Jacobsen v. Pedersen,* 190 N.W.2d 1 (N.D. 1971); *Barr v. Barnes County Board of County Commissioners,* 194 N.W.2d 744 (N.D.1972), and cases cited therein apply.

*Jacobsen v. Pedersen, supra,* involved an action by a "lower" landowner for damages and an injunction to restrain the "upper" landowners from using certain drainage ditches, and a mandatory injunction requiring the "upper" landowners to fill in certain portions of the drainage ditches. The lower court awarded damages to the lower landowner and granted an injunction against the upper landowners.

This Court, in discussing the injunctions, noted that there were two separate and distinct activities of the defendants being enjoined. Those separate and distinct activities were the drainage of Lone Tree Lake and 17 Acre Lake, and the construction or streamlining of the natural drainways leading from the immediate vicinity of each of the two lakes.

This Court concluded that NDCC § 61–01–22 requiring a permit to drain a pond, slough, or lake, was applicable to the drainage of Lone Tree Lake and 17 Acre Lake, and that the owners of the land upon which the lakes were located could be enjoined from draining the lakes until they complied with the provisions of NDCC § 61–01–22.

However, this Court noted that a different principle of law applied to the so-called streamlining of the natural drainways to drain surface waters and reaffirmed the "reasonable use" rule adopted in *Jones v. Boeing Company,* 153 N.W.2d 897 (N.D. 1967).

The gravamen of our holding in *Jacobsen v. Pedersen, supra,* was that there are two separate concepts of law which may be applicable in drainage cases, depending upon the factual circumstances of each case. Specifically, this Court stated:

"We will reaffirm the reasonable use rule that we adopted in *Jones v. Boeing Company,* 153 N.W.2d 897 (N.D.1967), as this rule is stated and explained in *Armstrong v. Francis Corp.,* 20 N.J. 320, 120 A.2d 4, and *Enderson v. Kelehan,* 226 Minn. 163, 32 N.W.2d 286 (1948), in all those factual situations where the provisions of Section 61–01–22, North Dakota Century Code, do not apply." *Jacobsen v. Pedersen, supra* at 7."

Thus, our initial consideration in the instant case is whether or not NDCC § 61–01–22 is applicable. If the facts of the case do not require the application of that section, then the reasonable use guidelines must also be considered.

NDCC § 61–01–22 in effect at the time of the acts complained of in this case provided [2] as follows:

"Any person, public or private corporation, proposing to drain waters from a pond, slough or lake, which impounds waters gathered therein and drained from an area comprising eighty acres or more into a natural watercourse, as defined by section 61–01–06, or into a draw or natural drainway, before constructing a ditch or facility for the purpose of such drainage shall submit to the state water conservation commission an application for a permit to do so. If sixty per cent or more of the watershed or drainage area of such watercourse, draw or natural drainway is embraced within the boundaries of a water conservation and flood control district, the state water conservation commission shall refer the application to the board of commissioners of such water conservation district for consideration and approval. Such permit shall not be granted until an investigation shall disclose that the quantity of

---

**2.** Section 61–01–22, NDCC, was amended by the Legislature in 1975 and again in 1977. It was repealed in 1981. [Current version appears at 61–16.1–41, NDCC. (S.L.1981, ch. 632, § 1)] The amendments did not change the basic concept that a permit or drainage easements are necessary to drain a pond, slough, or lake.

water which will be drained from the pond, slough or lake, as the case may be, will not exceed the capacity of such watercourse, draw or drainway to carry, and will not flood lands of lower proprietors. If such investigation shall show that the proposed drainage will cause such watercourse or drainway to overflow and flood the lands of lower landowners, the board of commissioners of the water conservation and flood control district or the state water conservation commission, as the case may be, shall not issue a permit until flowage easements are obtained from owners of lands which might be burdened with the flood waters of such watercourse, draw or drainway. Such flowage easements shall be filed for record in the office of the register of deeds of the county or counties in which such lands are situated. An owner of land proposing to drain the waters from such pond, slough or lake into a watercourse or natural drainway shall undertake and agree to pay the expenses incurred in making the required investigation. The provisions of this chapter shall not be construed to limit or restrict the establishment of drains by a board of county commissioners or by a township, and shall not apply to any county which has a board of drain commissioners, or to any drain constructed under the supervision of a state or federal agency.

"Any person or corporation draining, or causing to be drained, the waters of a pond, slough or lake, which impounds waters thereinto from a watershed or drainage area comprising eighty acres or more, into a watercourse without first securing a license or permit to do so, as provided by this chapter, shall be liable for all damage sustained by any person caused by draining such pond, lake or slough, and shall be deemed guilty of a misdemeanor and shall be punished by a fine of not more than one hundred dollars."

In order to determine whether or not this provision requiring a permit to drain ponds, sloughs, or lakes is applicable to the instant case, certain facts must be resolved one way or the other. A factual finding whether or not the drainage is from a pond, slough, or lake which impounds water from an area comprising 80 acres or more is necessary before the proper rule of law can be applied.

■■■ The trial court's memorandum opinion[3] relative to the applicability of NDCC § 61–01–22 provides as follows:

"Plaintiff alleges defendants have been guilty of violation of Sec. 61–01–22 N.D.C.C. by reason of their draining without the necessary easements or permits. This is a case of the pot calling the kettle black as plaintiff himself violated Sec. 61–01–07 of the Code by plugging the culvert under the Medberry Road and by building his two dams. It would seem that all parties had succeeded in circumventing the law."

However, neither the memorandum opinion nor the findings of fact set forth the necessary findings to establish whether or not the ditches drained ponds, sloughs, or lakes with a watershed of eighty acres or more, or merely gathered water that normally would have spread out over a larger area into a ditch along the natural drainway. A finding of fact is necessary on this issue before the proper rule of law, either NDCC § 61–01–22 or the "reasonable use" rule, can be applied. Realizing that additional findings of fact are necessary and that judicial economy would suggest that we should consider making them, we conclude that our inappropriate legal position[4] will not permit this.

---

3. The trial court's findings of fact do not refer to NDCC § 61–01–22; however, the trial court's memorandum opinion does. A memorandum decision may be used to clarify findings of fact. See, *Diemert v. Johnson,* 299 N.W.2d 546 (N.D.1980).

4. Appeals to the Court are not heard or determined on a de novo basis. Even if they were, we would not be in an appropriate position to attempt to make the necessary findings of fact because the record is not complete. It does not contain the court's impressions from viewing the property (land) in question. We also recog-

Although the trial court did not make the necessary findings to determine the applicability of NDCC § 61–01–22, the trial court did discuss the "reasonable use" rule set forth in *Jacobsen v. Pedersen, supra.*

In *Jacobsen v. Pedersen, supra* at 6, we cited with approval from *Enderson v. Kelehan,* 226 Minn. 163, 32 N.W.2d 286, 289 (1948), the following enunciation of the "reasonable use" rule:

"As promulgated in the leading case of *Sheehan v. Flynn,* 59 Minn. 436, 61 N.W. 462, 26 L.R.A. 632, and as amplified by subsequent decisions, the rule is that in effecting a reasonable use of his land for a legitimate purpose a landowner, acting in good faith, may drain his land of surface waters and cast them as a burden upon the land of another, although such drainage carries with it some waters which would otherwise have never gone that way but would have remained on the land until they were absorbed by the soil or evaporated in the air, if

(a) There is a reasonable necessity for such drainage;

(b) If reasonable care be taken to avoid unnecessary injury to the land receiving the burden;

(c) If the utility or benefit accruing to the land drained reasonably outweighs the gravity of the harm resulting to the land receiving the burden; and

(d) If, where practicable, it is accomplished by reasonably improving and aiding the normal and natural system of drainage according to its reasonable carrying capacity, or if, in the absence of a practicable natural drain, a reasonable and feasible artificial drainage system is adopted."

In *Enderson v. Kelehan, supra* 32 N.W.2d at 288–89, the Minnesota Supreme Court defined "surface waters" as "waters from rain, springs, or melting snow which lie or flow on the surface of the earth, but which do not form part of a well-defined body of water or natural watercourse." The Minnesota Supreme Court went on to note that surface waters do not lose their character merely because they are absorbed by or soak into the marshy or boggy ground where collected.

■ The "reasonable use" rule is essentially a tort concept and a determination of reasonable use in streamlining natural drainways or building artificial drainways to dispose of surface water is treated as a question of fact to be resolved according to the circumstances. *Armstrong v. Francis Corp.,* 20 N.J. 320, 120 A.2d 4 (1956); *Enderson v. Kelehan, supra.*

The trial court made the following statement relative to the "reasonable use" doctrine:

"That the Court finds and the plaintiff concedes that as to paragraph A of the Reasonable Use Doctrine there was a reasonable necessity for whatever drainage work was performed on the western Overby land.

"That paragraph B of said Reasonable Use Doctrine providing that 'reasonable care be taken to avoid unnecessary injury to the land receiving the burden' has been satisfied by the fact that plaintiff had already constructed his dam which prevented the western Overby water from reaching plaintiff's land; and by the fact that plaintiff, in mutual practice with defendant Schweigert, helped establish ridge between his land and the eastern Overby land and that plaintiff suffered no harm from said ridge.

"That paragraph C of the Reasonable Use Doctrine states 'whether or not the utility or benefit accruing to the land drained reasonably outweighs the gravity of the harm resulting to the land receiving the burden' has been met by the defendant Schweigert in that in accelerating the flow on the western Overby land a large area of land was benefited and because of the plaintiff's construction of a dam he received little if any harm. The area of land that plaintiff has complained about has been historically mar-

---

nize that the impressions may have been influenced by the law the judge thought was appro-

priate. *Diemert v. Johnson,* 299 N.W.2d 546 (N.D.1980).

ginal wet land of low productivity and plaintiff's attempt to bring it into full production by artificial means cannot fully succeed. The acreage of the land plaintiff has complained about is miniscule compared to the substantial acreage on the western Overby land.

"That paragraph D of the Reasonable Use Doctrine providing that 'where practicable it is accomplished by reasonable improving and aiding the normal and natural system of drainage according to its reasonable carrying capacity, or in the absence of a practicable natural drain, a reasonable and feasible artificial drainage system is adopted' has been satisfied by defendant Schweigert in that he by his improvements on the western Overby land did constitute a reasonable improvement in the normal and natural system of drainage on said land. No drastic changes were made and those that were carried out by defendant Schweigert only made for a more efficient flow of water."

■ We believe these statements were made under an erroneous conception of the reasonable use doctrine and, consequently, are not governed by the clearly erroneous standard of Rule 52(a), North Dakota Rules of Civil Procedure. See *Diemert v. Johnson,* 299 N.W.2d 546 (N.D.1980).

■ The trial court's memorandum opinion, findings of fact, conclusions of law, and judgment leave the clear impression that the trial court unduly relied upon the equitable principle that one seeking equity must do equity and concluded that Young, in some instances, had not displayed equity toward his neighbors and, therefore, was not entitled to damages of any kind or entitled to the relief requested. We believe the trial court erroneously equated negligence or contributory negligence with equity or in the alternative as a total bar to the recovery of damages. We are not satisfied that the legal principles, concepts, or rationale that inequitable conduct, if any, on Young's part will totally bar recovery under the "reasonable use" doctrine. Rather, we believe the "reasonable use" rule contemplates drainage which is not done negligently or unreasonably.

We also believe the trial court's "findings" are based on an erroneous concept of law and are inconsistent in the respect that the trial court did not find any harm to Young's land because of the dam he constructed on the northeast corner of his land.

In *Armstrong v. Francis Corp., supra,* the New Jersey Supreme Court refused to strictly apply a rule casting the burden on each lowland proprietor to protect his own land, or a rule strictly subjecting an upper landowner to liability for interfering with the natural flow of surface waters so as to cause an invasion of a lower landowner's interest in the use and enjoyment of his land. The New Jersey Supreme Court adopted the reasonable use rule because of its flexibility in requiring a consideration of "all the relevant circumstances, including such factors as the amount of harm caused, the foreseeability of the harm which results, the purpose or motive with which the possessor acted, and all other relevant matter." *Armstrong v. Francis Corp., supra* 120 A.2d at 10.

■ Although the trial court found that Schweigert accelerated the flow of water from the west Overby land, the trial court also found that because of Young's construction of a dam on the land he was not harmed. That finding effectively puts the burden on the lower landowner (Young) to protect his land, which the New Jersey Supreme Court rejected in *Armstrong.* Additionally, the trial court refused to award damages to Young for the building of the dam which prevented the runoff of water on the west Overby land from ultimately reaching his land. Although we recognize that the gravity of harm to the lower landowner is a criterion set forth in the reasonable use doctrine, we must also recognize that Young, in effect, reduced the gravity of the harm to his land by his own actions. We do not believe Young's activities in essentially mitigating or reducing the harm to his land should totally preclude further consideration under the "reasonable use" doctrine. Rather, we believe these actions may affect the amount of damages, if any, or

other relief to which the parties may be entitled. We believe the trial court unduly relied on the fact that Young built a dam to protect his land rather than considering whether or not the drainage, if any, was done unreasonably or negligently by the defendants.

We conclude that the trial court's findings that the drainage of surface waters was a reasonable use was based on an erroneous conception of the "reasonable use" rule. Furthermore, as explained earlier herein, it would be inappropriate for this Court to make findings under the reasonable use rule and, accordingly, we reverse the judgment and remand the case for a new trial [5] in accordance with the concepts expressed herein. A determination, within reasonable capabilities regarding the status of the landscape as it existed prior to the drainage implemented by man, should be made and will be beneficial in resolving which principle of law applies.

ERICKSTAD, C.J., VANDE WALLE and PEDERSON, JJ., and GRAFF, District Judge, concur.

GRAFF, D.J., sitting in place of PAULSON, J., disqualified.

---

**5.** Although this case could be remanded for further findings based on the rules of law expressed herein, we take judicial notice [see, *Bumann v. St. Paul Fire & Marine Insurance Co.,* 312 N.W.2d 459 (N.D.1981); *City of Fargo,* *Cass County v. State,* 260 N.W.2d 333 (N.D. 1977) ] that the trial judge who heard this case has since retired. Consequently, we believe a new trial is appropriate.