Mandy NILSON, Plaintiff and Appellant,

v.

Edwin MARKESTAD, Defendant and Appellee.

Civ. No. 10549.

Supreme Court of North Dakota.

July 23, 1984.

Norbert H. Lange, Devils Lake, for plaintiff and appellant.

Haugland & Heustis, Devils Lake, for defendant and appellee; argued by Evan F. Heustis, Devils Lake.

Charles K. Dayton of Pepin, Dayton, Herman, Graham & Getts, Minneapolis, Minn., for the North Dakota Chapter of the Wildlife Society, Inc., amicus curiae. No appearance.

SAND, Justice.

This is an appeal by the plaintiff, Mandy Nilson, from a district court judgment dismissing Nilson's action for damages against the defendant, Edwin Markestad, on its merits. We affirm.

Nilson filed his action for damages alleging that Markestad wrongfully drained water from his property which ultimately flowed onto Nilson's property causing damage to Nilson's residence and loss to his hay crop.

The following diagram may provide assistance in understanding the situation.

1. - Markestad slough
2 - Natural drainway
3,4,5 - Culverts
XXXXX - Fence

Neither party disputed that the Markestad slough is approximately 20 acres in size and collects water from a watershed area of 2,300 to 2,500 acres. Water from the slough drains through two natural outlets separated by a natural ridge. One outlet (the East outlet) is located on the southeast side of the slough and the other outlet (the West outlet) is located on the southwest side of the slough. The arrows on the diagram show the general direction of the water as it flows from the two outlets

through a natural drainway across the Gigstads' property and then onto Nilson's property via three culverts.

Nilson asserts that, during 1973, Markestad constructed an unauthorized drain from the West outlet of the slough to the northern boundary of the Gigstad property causing an increased volume of water from the slough to flow at an increased velocity onto Nilson's property through the two culverts designated numbers three and four on the diagram. Nilson contends that the increased flow of water through these culverts resulted in water damage to his residence and loss of hay crop which would not otherwise have occurred. Markestad asserts that, during 1973, he merely removed debris and sediment which had accumulated over the years in the natural drainway and that his actions constituted a reasonable use of his property for which he was not required to receive a permit or other authorization from any governmental body.

The trial court determined that Markestad merely streamlined the natural drainway from his slough for which he was not required to obtain a permit and as a result the reasonable use doctrine applied rather than Section 61–01–22, N.D.C.C. Accordingly, the trial court determined that Markestad's streamlining of the drainway constituted a reasonable use of his property for which he could not be held liable for the damages sought by Nilson. Based upon those determinations, the trial court dismissed Nilson's action on its merits.

Nilson has raised two issues on appeal:

(1) Whether or not the trial court erred in its determination that Markestad was not required to obtain a permit; and

(2) Assuming that Markestad was not required to obtain a permit, whether or not the trial court erred in its determination that Markestad had complied with the requirements of the "reasonable use" doctrine.

Nilson asserts that Markestad drained his slough without a permit in violation of Section 61–01–22, N.D.C.C.,[1] which provides in relevant part:

*"61–01–22. Permit to drain waters from certain ponds, sloughs, or lakes into a watercourse or natural drainway—Penalty.*—Any person, public or private corporation, proposing to drain waters from a pond, slough or lake, which impounds waters gathered therein and drained from an area comprising eighty acres or more into a natural watercourse, as defined by section 61–01–06, or into a draw or natural drainway, before constructing a ditch or facility for the purpose of such drainage shall submit to the state water conservation commission an application for a permit to do so. . . .

"Any person or corporation draining, or causing to be drained, the waters of a pond, slough or lake, which impounds waters thereinto from a watershed or drainage area comprising eighty acres or more, into a watercourse without first securing a license or permit to do so, as provided by this chapter, shall be liable for all damage sustained by any person caused by draining such pond, lake or slough, and shall be deemed guilty of a misdemeanor and shall be punished by a fine of not more than one hundred dollars."

Under Section 61–01–22, N.D.C.C., a permit must first be obtained to construct a ditch or facility to drain a slough which impounds waters gathered from an area comprising 80 acres or more. However, in our opinion, maintaining a drainway in its natural state by removing sediment and debris does not constitute draining as contemplated by that section. Thus, we construe Section 61–01–22, N.D.C.C., as not requiring a permit to merely clean debris or sediment from a natural drainway even though a slough of the requisite size drains into that drainway. Having reviewed the

---

**1.** Section 61–01–22, N.D.C.C., is applicable because it was in effect during 1973 when the acts giving rise to this litigation occurred. We note, however, that this section was repealed by Ch. 632, S.L.1981, and was replaced by Section 61–16.1–41, N.D.C.C.

record in this case, we agree with the trial court that Nilson failed to prove that Markestad did more than maintain or contemporaneously restore the drain to its natural original condition by only cleaning debris and sediment from the natural drainway through which the slough flows. Consequently, Markestad cannot be held liable to Nilson under Section 61–01–22, N.D.C.C., for failure to obtain a permit.

Although Nilson, on the evidentiary record before us, has failed to prove that Markestad was required to obtain a permit under Section 61–01–22, N.D.C.C., we make no determination as to the need for a permit or the application of the laws as they apply to the drainage of waters from Markestad's property for purposes other than this lawsuit.[2]

■ Nilson also asserts that the trial court erred in its determination that Markestad complied with all of the elements of the reasonable use doctrine and could not, therefore, be held liable to Nilson for the damages allegedly sustained by him. Generally if the provisions of Section 61–01–22, N.D.C.C., do not apply, the reasonable use doctrine is the standard for determining whether or not a landowner is liable for damages caused to another landowner whenever he drains surface waters from his land onto the latter's property. *Young v. Hamilton*, 332 N.W.2d 237 (N.D.1983); *Jacobsen v. Pedersen*, 190 N.W.2d 1 (N.D. 1971).

Our Court in *Lemer v. Koble*, 86 N.W.2d 44 (N.D.1957) noted that neither the owner of the upper land nor the owner of the lower land may interfere with the natural drainage so as to injure the rights of the other. This case was favorably referred to in *Jones v. Boeing Company*, 153 N.W.2d 897 (N.D.1967) in which the Court also favorably referred to the holding in *Rynes-*

*tad v. Clemetson*, 133 N.W.2d 559 (N.D. 1965) that the owner of the lower, or servient, estate must receive surface water from the upper or dominant estate in its natural flow. But the owner of the upper estate has no right to increase the flow in an artificial manner.

■ We conclude that the situation in this case is analogous to the surface water drainage cases and that the reasonable use doctrine applies to this situation as well. Accordingly, we conclude that a landowner, acting in good faith, may clean debris and sediment from a natural drainway through which slough waters flow, thereby casting the water as a burden upon the land of another, if:

"'(a) There is a reasonable necessity for such drainage;

(b) If reasonable care be taken to avoid unnecessary injury to the land receiving the burden;

(c) If the utility or benefit accruing to the land drained reasonably outweighs the gravity of the harm resulting to the land receiving the burden; and

(d) If, where practicable, it is accomplished by reasonably improving and aiding the normal and natural system of drainage according to its reasonable carrying capacity, or if, in the absence of a practicable natural drain, a reasonable and feasible artificial drainage system is adopted.'" 190 N.W.2d at 6.

■ The trial court's memorandum opinion contained findings of fact warranting the determination that Markestad complied with all of the elements of the reasonable use doctrine. The trial court's relevant fact findings are as follows:

(a) "... the ponding runoff surface waters in the defendant's slough threat-

---

**2.** At the request of the Benson County Water Board, the Benson County State's Attorney on 1 March 1982, wrote a letter to Markestad ordering him to close the "drainage ditch" because he had not secured the necessary permit for drainage. Markestad complied with the request. Thereafter, he applied for a drain permit, and on 12 January 1983, the Benson County Water Management District sent Markestad a letter which ambiguously stated, "... if you can prove that water from your slough drains from your drainage ditch ... the Water Board does not oppose it." In this opinion, we make no determination with regard to the substance or status of these matters.

ened his potable water supply, water which is piped some 1700 feet to his residence for family use."

(b) "The record is absent any showing that the streamlining of the natural drain reclaimed any land for agricultural or other purpose."

(c) "... there was a reasonable necessity for the natural drainway improvement."

(d) "The testimony of Clifford Hansen, a professional engineer, that the draining of 17 acre feet of water would raise the water on 250 acres only .68 [.068 foot] is not an unreasonable burden on that acreage."

(e) "... the evidence does not prove that the improvement or streamlining of the natural drain exceeded the reasonable carrying capacity of the drainway prior to improvement although the drain improvement resulted in accelerating the water flow and increasing its volume."

(f) "... the dredging and improving of the natural drainway, even though not professionally engineered, reasonably improved and aided the natural system of drainage from the defendant's slough."

Having reviewed the record in this case, we conclude that the trial court's findings, upon which it determined that Markestad complied with the reasonable use doctrine, are not clearly erroneous. Rule 52(a), N.D. R.Civ.P. We further conclude that the trial court, based upon its findings of fact, did not err in its determination that Markestad's cleaning of debris and sediment from the natural drainway was in compliance with the reasonable use doctrine. In accordance with this opinion, the judgment of the trial court is affirmed.

ERICKSTAD, C.J., VANDEWALLE and GIERKE, JJ., and ILVEDSON *, Surrogate Justice, concur.

* ILVEDSON, Surrogate Justice for this case pursuant to Section 27–17–03, N.D.C.C.