Hulda MARTIN, Mary Ann Hanson, and Harry C. Hanson, Plaintiffs and Appellees,

v.

Norman D. WECKERLY and Mattie Lou Weckerly, Defendants and Appellants.

Civ. No. 10696.

Supreme Court of North Dakota.

March 13, 1985.

William C. Kelsch, of Kelsch, Kelsch, Bennett, Ruff & Austin, Mandan, for plaintiffs and appellees.

Murray G. Sagsveen, of Zuger & Bucklin, Bismarck, for defendants and appellants.

VANDE WALLE, Acting Chief Justice.

The defendants, Norman D. Weckerly and Mattie Lou Weckerly (Weckerly), appealed a district court judgment awarding plaintiffs Hulda Martin, Mary Ann Hanson, and Harry C. Hanson (Hanson) compensatory and injunctive relief for damage to their property caused by drainage of surface water onto their land by Weckerly. We affirm.

Hulda Martin and her daughter, Mary Ann Hanson, own property in Sheridan County which is farmed by Mary Ann's husband, Harry Hanson. Weckerly owns and farms land which is adjacent to and upstream from Hanson's land.

The property involved in this case is situated in a part of North Dakota which is not well drained and is dotted with sloughs and ponds. Since acquiring this land Weckerly periodically improved the drainage of surface water from his land by drawing off water contained in sloughs and ponds, the majority of the improvements taking place prior to 1976.

In 1983 Hanson brought this action alleging Weckerly's drainage caused an excessive and unreasonable volume of water to flow from Weckerly's to Hanson's land, resulting in flooding, erosion, and a loss of acreage, crops, and income.

Following a four-day trial the district court concluded Weckerly had drained his land in a manner contrary to the "reasonable use" rule. The trial court awarded Hanson $33,874.76 in damages and costs and enjoined Weckerly to restore certain areas of his land to its pre-1972 condition.[1]

The reasonable-use rule is applied by courts in reconciling conflicting uses of surface water and the land over which it flows.[2] The reasonable-use concept is based upon the principle that although every landowner has the right to the use and enjoyment of his property, such use must be reasonable so as not to cause unnecessary injury to others.

This court has held that in effecting a reasonable use of his land for a legitimate purpose a landowner, acting in good faith, may drain his land of surface wa-

---

**1.** Prior to commencing his civil suit Hanson filed an administrative complaint with the Sheridan County Water Resource Board alleging Weckerly had drained his land without the necessary permit. The Water Resource Board determined Weckerly had drained without the requisite permit in violation of Section 61–01–22, N.D.C.C. (now Sec. 61–16.1–41), and Weckerly appealed the Board's decision to the district court. The district court consolidated Weckerly's appeal with Hanson's civil action. The Board's decision was subsequently vacated by the district court and there has been no appeal from that portion of the district court judgment.

**2.** The reasonable-use rule is applicable only in those situations where the provisions of Section 61–16.1–41, N.D.C.C., are not operative. *Nilson v. Markestad,* 353 N.W.2d 312 (N.D.1984); *Jacobsen v. Pedersen,* 190 N.W.2d 1 (N.D.1971).

ters [3] and cast them as a burden upon the land of another, although such drainage carries with it some waters which otherwise never would have gone that way but would have remained on the land until they were absorbed by the soil or evaporated in the air. *Nilson v. Markestad,* 353 N.W.2d 312 (N.D.1984); *Young v. Hamilton,* 332 N.W.2d 237 (N.D.1983).

■ Therefore, drainage of surface waters complies with the reasonable-use rule if:

"(a) There is a reasonable necessity for such drainage;

"(b) If reasonable care be taken to avoid unnecessary injury to the land receiving the burden;

"(c) If the utility or benefit accruing to the land drained reasonably outweighs the gravity of the harm resulting to the land receiving the burden; and

"(d) If, where practicable, it is accomplished by reasonably improving and aiding the normal and natural system of drainage according to its reasonable carrying capacity, or if, in the absence of a practicable natural drain, a reasonable and feasible artificial drainage system is adopted." *Young v. Hamilton, supra,* 332 N.W.2d at 242, quoting *Enderson v. Kelehan,* 226 Minn. 163, 166, 32 N.W.2d 286, 289 (1948).

■ Thus stated, the reasonable-use rule is essentially a tort concept [*Young v. Hamilton, supra*], and insofar as fundamental differences are concerned there seems to be no real distinction between a case where natural drainage of surface water is interfered with so as to damage someone's property and a case where damage is caused by fumes, noise vibrations, or other tortious acts. In each instance one possessor of land sustains harm in the use and enjoyment of his land as a result of another's use and enjoyment of his land. Consequently, the objective of the reasonable-use rule is to determine whether or

not circumstances exist which will justify a court in shifting the loss from the person harmed to the person causing the harm. See Kinyon and McClure, *Interferences With Surface Waters,* 24 Minn.L.Rev. 891 (1940). Compliance with the reasonable-use rule is a factual determination. *Nilson v. Markestad, supra; Young v. Hamilton, supra.*

In this instance the trial court, in applying the reasonable-use rule, determined Weckerly failed to satisfy any of the four reasonable-use tests delineated above. In effect, the trial court concluded Weckerly's drainage damaged Hanson's land and the drainage was not reasonable, and consequently the court shifted the loss so that Weckerly must bear the burden of the harm suffered by Hanson's property. On appeal Weckerly maintains the district court, in reaching this conclusion, committed sundry errors.

Weckerly asserts the trial court made the following erroneous findings of fact: (1) Weckerly had no "reasonable necessity" for his drainage [reasonable-use rule test (a)]; (2) Weckerly failed to take "reasonable care to avoid unnecessary injury" to Hanson's land [reasonable-use rule test (b)]; and (3) Weckerly's drainage was the proximate cause of the damage to Hanson's property.

These determinations are questions of fact which will not be set aside on appeal unless clearly erroneous. Rule 52(a), N.D. R.Civ.P.; *Young v. Hamilton, supra.* A finding of fact is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made. *Hall GMC, Inc. v. Crane Carrier Co.,* 332 N.W.2d 54 (N.D.1983). In reviewing questions of fact the Supreme Court will not reexamine factual determinations made by the trial court upon conflicting evidence, nor is it the province of this court to provide expertise on technical, nonlegal subjects or to appraise the credibility of

---

**3.** We have previously defined surface waters as "waters from rain, springs, or melting snow which lie or flow on the surface of the earth, but which do not form part of a well-drained body of water or natural watercourse." *Young v. Hamilton,* 332 N.W.2d 237, 242 (N.D.1983), quoting *Enderson v. Kelehan,* 226 Minn. 163, 166, 32 N.W.2d 286, 289 (1948).

expert witnesses. *Schmidt v. Plains Elec., Inc.*, 281 N.W.2d 794 (N.D.1979).

■ It is under this standard of review that we examine the factual issues raised by Weckerly. First, Weckerly claims a "reasonable necessity" existed for his drainage to improve farming efficiency, obtain more tillable land, and reduce the volume of standing water which has high salinity and attracts blackbirds. While Weckerly's drainage may have in fact improved his farming it does not follow perforce there was a "reasonable necessity" for the drainage. Any drainage which benefits the land will not necessarily constitute a "reasonable necessity." The "reasonable necessity" requirement must be considered in light of the policy established by the reasonable-use rule to equitably balance the developing and improving of land with any consequential harm to other property. Viewed in this context it is clear that a "reasonable necessity" means more than simply any improvement to the benefited land. The trial court was in the superior position to factually appraise the "reasonable necessity" of Weckerly's drainage in conjunction with the other aspects of the reasonable-use rule. The trial court determined there was not a "reasonable necessity" for Weckerly's drainage and we cannot conclude this decision was clearly erroneous.

The trial court's determination that Weckerly failed to take reasonable care to avoid unnecessary injury to Hanson's land similarly is not clearly erroneous. In essence the trial court concluded Weckerly conducted no investigation concerning the impact his drainage would have on downstream landowners and that he otherwise took no significant action to avoid unnecessary harm to Hanson's property. Weckerly has not persuaded us the trial court clearly erred in this factual determination and consequently it will not be set aside.

Weckerly's final contention is that the trial court erred in holding his drainage was the proximate cause of the damage to Hanson's land.

The determination of proximate cause is a question of fact and thus is governed by Rule 52(a), N.D.R.Civ.P. *Layman v. Braunschweigische Maschinenbauanstalt*, 343 N.W.2d 334 (N.D.1983). The trial court found Weckerly's drainage was the proximate cause of the damage to Hanson's property.

Initially, Weckerly asserts there was no proof that his improved drainage caused any abnormal runoff and that any high runoff was attributable to unseasonably high rainfall. The trial court rejected these assertions and our review of the record does not convince us this conclusion was clearly erroneous.

We reach a similar conclusion concerning Weckerly's assertion the trial court erred in holding him liable for all the water which flowed onto Hanson's land. Weckerly claims that drainage from other upstream landowners was responsible for the bulk of the runoff, and consequently the bulk of the drainage, to Hanson's property.

We find Weckerly's argument unconvincing. Weckerly voluntarily consented to the drainage of water onto his land by upstream landowners. It was, or should have been, reasonably foreseeable to Weckerly that the commingling and subsequent drainage of his surface water with that of upstream landowners could cause harm to Hanson's property. See *F-M Potatoes, Inc. v. Suda*, 259 N.W.2d 487 (N.D.1977), and *Moum v. Maercklein*, 201 N.W.2d 399 (N.D.1972). Because Weckerly consented to the drainage by upstream landowners their water became Weckerly's responsibility as it flowed on and then off his land. Weckerly consented to let his land serve as a conduit of the upstream landowners' water and is liable for the harm it caused just as if it had originated on his own property. We conclude the trial court's finding that Weckerly's drainage was in violation of the reasonable-use rule was not clearly erroneous.[4]

4. It is important to recognize that the four tests comprising the reasonable-use rule are conjunctive; all four tests must be met for Weckerly's drainage to comply with the reasonable-use

Weckerly's attempt to circumvent the Rule 52(a), N.D.R.Civ.P., standard of review by claiming the trial court's application of the reasonable-use rule was based upon a "totally erroneous conception of the law" is without merit. See *Diemert v. Johnson*, 299 N.W.2d 546 (N.D.1980). Weckerly claims the trial court construed the reasonable-use rule to prevent any improvements to drainage by a landowner. We cannot agree. In making its factual determinations it appears the trial court balanced the benefit accruing to Weckerly's land against the gravity of the harm to Hanson's land [*Nilson v. Markestad, supra; Young v. Hamilton, supra*], and this was a proper application of the reasonable-use rule. The law should not inhibit reasonable development and improvement of land, but neither should it allow a landowner to expel surface water without regard to the consequences. This principle is expressed as one of the maxims of jurisprudence codified as Section 31–11–05(5), N.D. C.C.: "One must so use his own rights as not to infringe upon the rights of another." It is more precisely defined by the Latin phrase *Sic utere tuo ut alienum non laedas*, "Use your own property in such a manner as not to injure that of another." Black's Law Dictionary 1238 (5th ed. 1979).

Weckerly's final issues on appeal allege the trial court erroneously awarded Hanson damages and granted injunctive relief.

The trial court determined Weckerly's drainage proximately caused Hanson's loss of cropland to sloughs and drainways, cropland reduced to hayland, loss of production due to flooding and delay in planting, costs for installing grass drainways to stabilize drainways, and other repairs necessary to secure access to his fields. Hanson was awarded $8,000 for loss of production, $22,600 for damage to his land, and $3,274.76 in costs and disbursements, for a total judgment of $33,874.76.

█ The trial court's determination of damages is a finding of fact [*Intern. Feed Products v. Alfalfa Products*, 337 N.W.2d 154 (N.D.1983)], and we will not interfere with an award of damages unless it is so excessive as to be without support in the evidence [*Pfliger v. Peavey Co.*, 310 N.W.2d 742 (N.D.1981)].

Weckerly claims the court erroneously attributed 100 percent of Hanson's damages to Weckerly although his runoff contributed only a small portion of the water flowing onto Hanson's land. As previously discussed, although Weckerly's drainage contributed only a portion to the runoff onto Hanson's land, he willingly permitted his land to serve as a conduit of water drained by upstream landowners. Consequently, Weckerly is liable for the damage caused by all the surface water flowing from his land onto Hanson's due to his unnecessary and unreasonable draining.

█ Weckerly's further arguments that the trial court improperly compounded Hanson's damages and that Hanson was contributorily negligent are unconvincing. Consequently, the award of monetary damages was not clearly erroneous and so excessive as to be without support in the evidence [*Pfliger, supra*], and so is affirmed.

Weckerly's final contention is the trial court erred in granting injunctive relief in ordering him to in effect restore his property to its pre-drainage state.

Weckerly maintains the injunction was improper because he was coincidentally ordered to pay Hanson damages for permanent loss of cropland. Weckerly asserts the trial court's judgment was inconsistent because if he is enjoined from draining he will not be contributing any artificially drained water onto Hanson's land and consequently will not be causing any permanent damage. Such relief, Weckerly claims, is not equitable but is punitive.

The trial court determined Hanson's loss of cropland was permanent regardless of Weckerly's future drainage and thus correctly awarded Hanson compensatory damages. The injunction was additionally necessary to prevent Weckerly from continu-

rule. The trial court ruled that Weckerly failed to satisfy any of the four tests.

ing to drain and causing further damage to downstream property owners. The conjunctive granting of monetary and injunctive relief was consequently necessary to fully and equitably compensate and protect Hanson.

Weckerly additionally challenges the injunction by claiming it is overly broad in "forever" denying him the opportunity to reasonably improve his drainage, forcing him to secure drainage easements from downstream landowners before opening any drains or granting permission to any upstream landowners to drain water upon his land.

■■■ The granting of injunctive relief is equitable in nature and rests in the sound discretion of the trial court. The trial court's ruling will not be reversed on appeal unless there has been an abuse of discretion. *State for Ben. of Employees of State v. Jensen,* 331 N.W.2d 42 (N.D.1983). Here, the trial court, in its discretion, formulated an injunction to prohibit Weckerly from unreasonably draining his land of surface water. It does not appear to impose undue constrictions upon Weckerly. Any injunction which is not clear in its intent may be void. *Regan v. Sorenson,* 13 N.D. 357, 100 N.W. 1095 (N.D.1904). Therefore, it is necessary to affirmatively set out the parameters of the injunction. If in the future Weckerly can demonstrate that the injunction is unduly and inequitably burdensome he may request the trial court to modify or dissolve it. *Viestenz v. Arthur Township,* 129 N.W.2d 33 (N.D.1964); *Mevorah v. Goodman,* 65 N.W.2d 278 (N.D. 1954). We conclude that the injunctive relief ordered by the trial court was proper and not an abuse of discretion.

The judgment of the district court is affirmed.

GIERKE, J., VERNON R. PEDERSON, Surrogate Justice, and HUNKE, District Judge, concur.

PEDERSON, Surrogate Justice, participated.

HUNKE, District Judge, sat in place of ERICKSTAD, C.J., disqualified.

Justice PAUL M. SAND, who died on December 8, 1984, was a member of this Court at the time this case was submitted; MESCHKE and LEVINE, JJ., not being members at that time, did not participate.