Filed 5/14/13 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2013 ND 80

Francis Maddock and 

Deborah Maddock, Plaintiffs and Appellants

v.

Larry Andersen, Jane Andersen, 

Howard Andersen, Roland Waite, 

Karen Waite, Reed Merkel, Ella 

Waite, David Waite, Denise Just, 

Debra Peters, Dawn Hernandez, 

Diane Watson, Donna Peterson, 

and James Peterson, Defendants

Larry Andersen, Jane Andersen, Appellees

No. 20120271

Appeal from the District Court of Dickey County, Southeast Judicial District, the Honorable Daniel D. Narum, Judge.

AFFIRMED.

Opinion of the Court by Sandstrom, Justice.

Richard A. Sommers (argued) and Greg L. Peterson (on brief), 305 Sixth Avenue SE, P.O. Box 970, Aberdeen, S.D. 57402-0970, for plaintiffs and appellants.

David R. Bliss (argued) and Micheal A. Mulloy (appeared), 400 East Broadway Avenue, Suite 308, P.O. Box 4126, Bismarck, N.D. 58502-4126, for defendants and appellees.

Maddock v. Andersen

No. 20120271

Sandstrom, Justice.

[¶1] Francis and Deborah Maddock appeal a district court judgment denying their request for permanent injunctive relief.  We affirm.

I

[¶2] Larry and Jane Andersen operate a farm approximately three miles from the Maddocks’ property.  In the 1960s, a drainage ditch was built by Larry Andersen’s father to allow water to drain into a slough located on the Andersens’ property.  The Maddocks allege the Andersens’ ditch now causes water to unnaturally drain onto their property, and they sought a permanent injunction stopping the flow of water from the ditch onto their land.  At trial, both the Maddocks and the Andersens presented their own expert witness, each of whom testified to the flow of water from the slough and various other areas and to the environmental makeup of pooling water.  Other lay witnesses also testified.

[¶3] The district court concluded the Maddocks failed to show the water on their property came primarily from the Andersens’ drain and the Maddocks failed to identify or investigate three other possible locations from which water might flow onto their land.  The district court also concluded it is necessary for the drainage ditch to remain open to protect the Andersens’ home and the Andersens took reasonable care to avoid unnecessary damage to the Maddocks’ land.

[¶4] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27-05-06.  The Maddocks timely appealed from the district court order under N.D.R.App.P. 4(a).  We have jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28-27-01.

II

[¶5] On appeal, the Maddocks argue the district court erred in finding the Andersens complied with the reasonable use rule and the Maddocks were not entitled to injunctive relief.

[¶6] The granting of an injunction may be appropriate if a property owner is unreasonably draining land.  
See
 
Martin v. Weckerly
, 364 N.W.2d 93 (N.D. 1985):

The granting of injunctive relief is equitable in nature and rests in the sound discretion of the trial court.  The trial court’s ruling will not be reversed on appeal unless there has been an abuse of discretion.  
State for Ben. of Employees of State v. Jensen
, 331 N.W.2d 42 (N.D. 1983).  Here, the trial court, in its discretion, formulated an injunction to prohibit Weckerly from unreasonably draining his land of surface water.  It does not appear to impose undue constrictions upon Weckerly.

Id.
 at 98.

[¶7] The Maddocks argue the district court should have found the Andersens were unreasonably draining their land.  The Maddocks specifically argue the district court erred in finding the Andersens complied with the reasonable use rule.

[¶8] Our review of a district court’s findings of fact is well-established.  “A trial court’s findings of fact will not be set aside unless clearly erroneous.”  
Albrecht v. Metro Area Ambulance
, 2001 ND 61, ¶ 6, 623 N.W.2d 367.  “A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence supports it, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made.”  
Niska v. Falconer
, 2012 ND 245, ¶ 10, 824 N.W.2d 778.  “‘We do not reweigh evidence or reassess credibility, nor do we reexamine findings of fact made upon conflicting testimony.  We give due regard to the trial court’s opportunity to assess the credibility of the witnesses, and the court’s choice between two permissible views of the evidence is not clearly erroneous.’”  
B.J. Kadrmas, Inc. v. Oxbow Energy
, 2007 ND 12, ¶ 7, 727 N.W.2d 270 (quoting 
Buri v. Ramsey
, 2005 ND 65, ¶ 10, 693 N.W.2d 619).

[¶9] We have defined the reasonable use doctrine in deciding issues of surface water drainage:

[I]n effecting a reasonable use of his land for a legitimate purpose a landowner, acting in good faith, may drain his land of surface waters and cast them as a burden upon the land of another, although such drainage carries with it some waters which otherwise never would have gone that way but would have remained on the land until they were absorbed by the soil or evaporated in the air.

Weckerly
, 364 N.W.2d at 94-95 (footnote omitted).  Further, surface water drainage satisfies the reasonable use doctrine if:

(a) There is a reasonable necessity for such drainage;

(b) If reasonable care be taken to avoid unnecessary injury to the land receiving the burden;

(c) If the utility or benefit accruing to the land drained reasonably outweighs the gravity of the harm resulting to the land receiving the burden; and 

(d) If, where practicable, it is accomplished by reasonably improving and aiding the normal and natural system of drainage according to its reasonable carrying capacity, or if, in the absence of a practicable natural drain, a reasonable and feasible artificial drainage system is adopted.

Id.
 at 95 (quoting 
Young v. Hamilton
, 332 N.W.2d 237, 242 (N.D. 1983)).  The Maddocks argue the district court’s findings of each element were clearly erroneous.

A

[¶10] The Maddocks argue the Andersens did not demonstrate a reasonable necessity for their use of the drainage ditch.  Larry Andersen testified at trial he stopped raising hogs on his farm because he ran out of space because of the rising water.  The Andersens’ expert witness testified that if the drainage ditch were closed, the water would rise approximately 2.2 feet onto the Andersens’ farmstead.  The Maddocks contend, however, this observation is false.  The Maddocks’ expert witness introduced photographic evidence at trial showing that if the drain were closed, the overflow from the slough would drain in another direction and not onto the Andersens’ farmstead.  The district court found the Andersens’ testimony more credible and found it reasonably necessary for the Andersens to keep the ditch open to protect their farmstead.  We conclude the district court’s finding is not clearly erroneous.

B

[¶11] The Maddocks next argue the Andersens did not take reasonable care to avoid unnecessary injury to their property.  Specifically, the Maddocks argue Larry Andersen testified other drainage ditches on his property flow into the overflowing slough and he has not taken any steps to plug those ditches or prevent further overflow.  At trial, the district court heard testimony from Michael Kelly, who acknowledged he cleaned and dredged the other drainage ditches on the Andersens’ property.  The Maddocks argue the dredging and cleaning of drainage ditches near the property constitutes unreasonable care.  The Andersens acknowledge water flows from their property, but it cannot be shown whether it is the cause of the Maddocks’ damage.  The Andersens’ expert witness testified there are at least three other watersheds drawing water onto the Maddocks’ property.  The district court found the Andersens could take no reasonable steps to avoid damage.  The court found “the drain at issue is 40 some years old and was constructed upon consultation with the federal agency that governs water drainage and soil conservation at the time it was constructed” and thus constituted reasonable care.  The record supports the court’s finding that no steps could be taken by the Andersens to avoid injury to the Maddocks’ property.  We are not left with a definite and firm conviction a mistake has been made, and we conclude the district court’s finding is not clearly erroneous.

C

[¶12] Third, the Maddocks argue the benefit to the Andersens’ property does not outweigh the Maddocks’ crop loss.  At trial, the Maddocks testified and produced evidence of actual crop loss on their property.  The Maddocks showed their property averaged 243 planted acres from 1998-2008 and 193.76 planted acres since 2009, when water began flowing onto their property.  The Maddocks also argued there was no actual damage to the Andersens’ home and any potential loss to the Andersens’ homestead was purely speculative.  The Andersens’ expert witness testified, however, if the drain were plugged, the water would rise an additional 2.2 feet on their property, creating additional flooding groundwater and seepage issues as it pooled closer to the structures on the Andersens’ property.  He warned the court of the risk of water seeping into the homestead with greater amounts of standing water close to the home.  Larry Andersen testified he lost a shelter housing hogs as well as some machinery because of standing water.  He testified water had pooled in his basement.

[¶13] The Maddocks argue photographic evidence shows the water flowed onto their property from the South drain and thus discredits the Andersens’ expert witness testimony.

[¶14] At trial, the Maddocks both testified there is no other source of water flowing onto their property than the Andersens’ ditch.  Francis Maddock testified:

Q: Okay.  But you also acknowledge, if I understand your testimony, other sources.  Correct?  Of water that impacts Sec. 11?

A: I don’t believe so.

Q: Okay.  So no other water is coming except from the ditch in Sec. 3?

A: Yes.

Similarly, Deborah Maddock testified:

Q: Okay.  So, you’re not saying that there are any other watersheds other than the watershed which flows into the Andersen’s ditch that contribute to the flowage on Sec. 11?

A: I know nothing of the watersheds in the area.  I only know where the water comes from.

Q: Okay.  And there’s no other water source other than that source and runoff.

A: That’s flowing.  Correct.

[¶15] Both parties’ expert witnesses testified there were other sources of water flowing onto the Maddocks’ property.  The district court found, however, three out of four possible areas of water flow were not investigated or identified by the Maddocks’ expert.  The district court acknowledged it is the Maddocks’ burden to show that there are no other identifiable sources of water substantially contributing to the water on their property.  As a matter of public policy, the district court found there is a “special place in the law for one’s homestead” and that when “weigh[ing] damage to a homestead versus loss of crop, this court finds in favor of trying to protect the homestead.”  We will not reexamine findings of fact made by the trial court upon conflicting evidence, and the district court’s finding is not clearly erroneous.

D

[¶16] Next, the Maddocks argue the district court erred in finding the wet weather cycle constitutes an Act of God.  Specifically, they argue the district court erred by not considering the factors when determining an “Act of God.”  “Whether an act-of-

God defense has been established is a question of fact.”  
Aasmundstad v. State of North Dakota
, 2008 ND 206, ¶ 19, 763 N.W.2d 748.  At trial, the Andersens’ expert witness testified southeastern North Dakota was experiencing a substantial increase in rainfall and the ground was particularly saturated.  He testified the area had experienced two to four inches of additional rainfall above the average.  He also testified water flowing onto the Maddocks’ property could be from any of four watersheds in the area.  In its findings the district court noted, “The Court has recognized that ‘it is neither practical nor feasible to provide drainage structures sufficient to cope with cataclysmic events.’”  On the basis of the Andersens’ expert witness’s testimony, the district court found that crop loss was not an unusual result of a wet cycle and the Andersens were not required to modify their ditch as a result.  There is evidence in this record to support the court’s finding that the Andersens could not have reasonably predicted the increased amount of rainfall.  The district court’s finding is not clearly erroneous.

E

[¶17] Finally, the Maddocks argue the district court erred in finding they failed to mitigate their damages.  At trial, the Maddocks testified they refused to let Ada Township install a culvert on a section road.  Francis Maddock testified he “didn't want that culvert there because all it did was add to the, to the water basin on my land.”  The Andersens’ expert witness testified, “Without the culvert, like I said, it would pond to the top of the roadway and the water would be backed up into Sec. 11 [onto the Maddocks’ property].”  The Maddocks eventually allowed the culvert to be installed.  The district court found the Maddocks “created part of the problem by refusing to allow an outlet for their Sec. 11 water, causing such water to pond on their own land.”  The record supports the district court’s finding the Maddocks failed to mitigate their damages.  We are not left with a definite and firm conviction a mistake has been made and conclude the district court’s finding is not clearly erroneous.

III

[¶18] Because the district court’s finding the Andersens complied with the reasonable use rule is not clearly erroneous, it did not abuse its discretion in denying the injunction sought by the Maddocks.

[¶19] Our affirmance of the district court’s finding there was no violation of the reasonable use rule makes it unnecessary to decide whether noncompliance with the reasonable use rule may be found forty years after the drainage was established.

[¶20] We affirm the judgment.

[¶21] Dale V. Sandstrom

Daniel J. Crothers

Mary Muehlen Maring

Carol Ronning Kapsner

I concur in the result.

Gerald W. VandeWalle, C.J.