1998 ND 191

James NESS, Plaintiff and Appellant,

v.

WARD COUNTY WATER RESOURCE
DISTRICT, Defendant and
Appellee.

Civil No. 980072.

Supreme Court of North Dakota.

Oct. 30, 1998.

Joseph J. Cichy, of Olson Cichy, Bismarck, for plaintiff and appellant.

Gary H. Lee, of Olson Burns Lee, Minot, for defendant and appellee.

MARING, Justice.

[¶ 1] James Ness appeals the district court's affirmance of the Ward County Water Resource District's (District) order mandating the placement of a culvert beneath a township road. The appeal involves Ness' dispute with the District over the depth and location of the culvert on a township road

that runs east-west on the northern border of his property. Ness complains the current placement of the culvert does not allow drainage in its natural drainage pattern, and as such, his land is damaged due to the accumulation of excess water not being drained off his land. We reverse the district court's amended judgment affirming the District's order because the District did not possess the authority to make such a determination.

I

[¶ 2] James Ness owns the NW¼ of Section 35 in Freedom Township, Ward County, North Dakota. Section 26 is directly to the north of Section 35. A Freedom Township road (Road) runs along the northern border of Section 35 and southern border of Section 26. At a point near the northwest corner of Section 35, and southwest corner of Section 26, the Road curves gradually to the north and then back to the south, following the natural contour of the land. The arcing of the Road at this point results in water being artificially impounded upon Ness' land in the northwest corner of Section 35.

[¶ 3] Prior to the Road's construction in approximately 1950, surface waters flowed naturally between Sections 35 and 26. It was only after the construction of the Road that water began to pond in the northwest corner of Section 35 on what is now Ness' property. Around the time of construction, a culvert was placed in the Road near the northwest corner of Section 35 to allow draining of surface water to the northwest. In 1986, Freedom Township built up the Road due to high water, and as a result, the culvert was filled in and lost.

[¶ 4] In approximately September 1994, Marvin Ness, on behalf of his son James, requested the Freedom Township Board of Supervisors (Township Board) install a culvert beneath the Road near the northwest corner of Section 35. On September 22, 1994, the Township Board applied to the District for a culvert permit. The application sought authorization from the District to install a culvert under the Road in the location requested by James Ness. The record does not indicate whether the application was granted or denied by the District. Nevertheless, on April 7, 1995, Township Board members installed a culvert beneath the Road near the northwest corner of Section 35. Specifically, the culvert was placed on the northwest side of the wetland formed in the Road's arc. In the following weeks, Marvin Ness expressed his concerns about the culvert's depth to Township Board president, John Pietsch. Marvin Ness was concerned the culvert could not effectively drain the pond at the depth it was placed. Mr. Pietsch responded that the District had determined the culvert's location and depth, and the Township Board intended to follow that determination. In May 1995, Marvin Ness met with representatives of the District, Township Board, Natural Resources Conservation Service, and U.S. Fish and Wildlife at the site to discuss his concerns. The various representatives decided the Road had been handled properly, and the culvert's location and depth were not changed.

[¶ 5] On June 13, 1995, James Ness, through his counsel, expressed to the Township Board and District representatives that he wished to have the culvert placed at its natural level of drainage. The Township Board met on August 7, 1995, and determined no action was necessary since the Road was in good condition. On November 1, 1995, James Ness made a formal request to the District for a hearing to determine the proper location of the culvert. Ness asserted the culvert was not placed in the natural drain, and as a result, water continued to pond to the detriment of his land.

[¶ 6] The District conducted a formal hearing on February 7, 1996. Testimony was taken from several individuals, including Marvin Ness. At the hearing, Marvin Ness initially argued a northeast drainage route (as opposed to the current northwest drainage) was in fact the natural drainage pattern of the surface waters, and thus the culvert should be placed to allow drainage in that direction. At some point during the hearing, Ness, by and through his attorney, amended his complaint seeking establishment of a drain not in any specific location, but rather at the natural drainage elevation.

[¶ 7] At the close of the February 7, 1996, hearing, the District left the record open and requested further technical assistance from the State Engineer to determine the appropriate depth and location for the culvert. The State Engineer's report reached a number of conclusions: 1) a northeasterly drain would cause significant downstream damage to Section 26 because the flow would pass over and erode the section's tilled soil; 2) a northwesterly drain would pass through a grassed swale and graveled ditch, causing significantly less downstream impact and would better respect the affected federal wetland easements; and 3) a depth of 2079 msl (mean sea level) was recommended for a culvert in the northwest corner of the pond. On July 8, 1996, based upon this report, the District ordered the culvert remain in the northwest corner, with a depth of 2079 msl.

[¶ 8] Following an order from the district court on October 23, 1996, the District reopened proceedings to accept further evidence, specifically additional surveys conducted to determine the appropriate depth of the culvert. James Ness and the District each had a survey performed. Ness' surveyor, a private, licensed surveyor, concluded the natural drainage elevation of the culvert was at a depth of 2076.8 msl. The District's surveyor, the Ward County Highway Engineer, concluded the natural drainage elevation of the culvert was at a depth of 2077.9 msl.

[¶ 9] The District conducted a second hearing on January 16, 1997, and received both surveys as well as additional testimony. At the conclusion of the hearing, the District was essentially left with three choices as to depth of the culvert: 1) 2079 msl (State Engineer); 2) 2077.9 msl (District's surveyor); and 3) 2076.8 msl (Ness' surveyor). The District chose the second depth, issuing its second order on May 18, 1997, leaving the culvert in the northwest corner of Section 35 at a depth of 2077.9 msl.

[¶ 10] James Ness appealed the District's order to the district court. The district court determined the District had properly exercised its discretion, and affirmed the District's order. Ness appeals the district court's amended judgment affirming the District's order to this Court.

## II

[¶ 11] The parties in this case have focused their arguments on the propriety of the District's order leaving the culvert in the northwest corner outlet of Section 35 at a depth of 2077.9 msl. The District argues its decision was not arbitrary and capricious because it carefully considered the three elevation alternatives for the culvert and fully considered the downstream impact caused by the project. Ness, on the other hand, argues the District abused its discretion because its decision violates the mandates of N.D.C.C. § 24-03-06, which requires township roads to be constructed in a way that does not obstruct the natural flow of surface water. Before reviewing the District's decision, however, we must first determine whether the District had the authority to make that decision.

[¶ 12] The statutory powers of a township board of supervisors are found in N.D.C.C. Titles 24 and 58, while a water resource district's statutory powers are found in Title 61. Statutory interpretation is a question of law fully reviewable on appeal. *Heck v. Reed,* 529 N.W.2d 155, 160 (N.D. 1995). The primary goal in construing a statute is to ascertain the legislature's intent. *Medcenter One, Inc. v. North Dakota State Bd. of Pharmacy,* 1997 ND 54, ¶ 13, 561 N.W.2d 634. We interpret statutes in context, endeavoring to give meaningful effect to each statute on the same subject without making one or the other useless. *Interest of K.G.,* 551 N.W.2d 554, 556 (N.D.1996).

[¶ 13] We recently addressed the issue of whether a township board of supervisors or a water resource district has the authority to install a culvert beneath a township road to preserve a natural drainway for surface waters. *See Kadlec v. Greendale Tp. Bd. of Tp. Supervisors,* 1998 ND 165, ¶ 10, 583 N.W.2d 817. In so doing, we reconciled a number of statutes conferring various powers upon township and water resource district boards. *Id.* at ¶¶ 13–16. In construing the statutes together, we reaffirmed prior precedents and concluded township boards, and not water

resource districts, have supervisory authority under N.D.C.C. § 24–03–06 to decide whether to install a culvert beneath a township road to preserve a natural drainway for surface waters. *Id.* at ¶¶ 13, 16.

[¶ 14] We have consistently interpreted N.D.C.C. § 24–03–06 as imposing upon a township board of supervisors a mandatory duty to not construct or reconstruct township roads in a way that obstructs the natural flow and drainage of surface waters. *See Viestenz v. Arthur Tp.*, 129 N.W.2d 33, 39–40 (N.D.1964); *Lemer v. Koble*, 86 N.W.2d 44, 47–48 (N.D.1957); *Viestenz v. Arthur Tp.*, 78 N.D. 1029, 1033–34, 54 N.W.2d 572, 575 (1952). N.D.C.C. § 24–03–06 provides:

> Any and all highways of any kind hereafter constructed or reconstructed by the department, any board of county commissioners, any board of township supervisors, their contractors, subcontractors or agents, or by any individual firm or corporation, *must be so designed as to permit the waters running into such ditches to drain in coulees, rivers, and lakes according to the surface and terrain where such highway or highways are constructed in accordance with scientific highway construction and engineering* so as to avoid the waters flowing into and accumulating in the ditches to overflow adjacent and adjoining lands. In the construction of highways, as herein provided, *the natural flow and drainage of surface waters may not be obstructed, but such water must be permitted to follow the natural course according to the surface and terrain of the particular terrain.* (Emphasis added.)

In other words, when a township road is constructed or reconstructed, N.D.C.C. § 24–03–06 imposes three obligations on the township board of supervisors: 1) the natural flow and drainage of surface waters must be permitted to follow the natural drainage pattern according to the natural terrain of the land, *Kadlec*, 1998 ND 165 at ¶ 18, 583 N.W.2d 817; 2) drainage must be provided for any water that might accumulate in ditches along roadways in order to prevent overflowing onto adjoining lands, *id.;* and 3) the best method of finding the natural outlet for the surface waters "must be determined by the township board in accordance with good engineering practices." [1] *Viestenz*, 129 N.W.2d at 34 (citations omitted).

[¶ 15] The water resource district's role in a township's endeavor to install a culvert under a township road is described in N.D.C.C. 24–06–34, which provides in part:

> Whenever a county or township plans to construct or reconstruct a bridge, install or modify a culvert, or construct or reconstruct a drain in connection with a roadway or railway, the county or township shall provide notice in any way to the water resource board of the water resource district in which is located the bridge, culvert, or drain. This notice must be given at least thirty days prior to the date construction or reconstruction is to begin. *The water resource board may submit comments concerning the construction or reconstruction to the appropriate officials of the county or township.* (Emphasis added.)

In *Kadlec*, we determined although N.D.C.C. § 24–06–34 allows a water resource district board to advise a township on plans to, among other things, construct or reconstruct a culvert, "the statute does not give the water resource board any decisionmaking authority to control the process." 1998 ND 165, ¶ 14, 583 N.W.2d 817. Rather, a water

---

1. We note here the question of what constitutes the natural drainage pattern of surface waters is a question of fact. *Viestenz*, 129 N.W.2d at 35 (stating whether a township board followed "good engineering practices ... to reestablish the natural flow of such waters ... is a question of fact"). The Legislature has vested township boards with the discretion to determine, according to good engineering practices, the natural drainage pattern of surface waters through which a township road runs, and we have previously stated we will not substitute our judgment for that of a township board. *Cf. Ames v. Rose Tp. Bd. of Supervisors*, 502 N.W.2d 845, 851 (N.D.1993). Because township boards, not the courts, were given the authority under N.D.C.C. § 24–03–06 to determine the natural drainage pattern of affected surface waters, our standard of review in such cases is limited to whether the township board acted arbitrarily, capriciously, or unreasonably in making its decision. *See Hector v. Bd. of Tp. Supervisors of Stanley Tp.*, 177 N.W.2d 547, 550 (N.D.1970).

resource district is given power only to "[c]oordinate proposals for installation, modification, or construction of culverts and bridges in an effort to achieve appropriate sizing and maximum consistency of road openings." *Id.* at ¶ 15 (quoting N.D.C.C. § 61–16.1–09(21)). We concluded

> [w]hile water resource districts have been given broad powers to control waters within their jurisdictions, they have not been given authority to make the decision to install a culvert under a township road in a natural watercourse. Rather, water resource districts have the authority to direct a township to install a culvert to accommodate a drain.[2]

*Id.* (citations omitted).

[¶ 16] In light of *Kadlec*, therefore, we must determine whether the District's decision supplanted the authority of the Township Board on this matter. In September 1994, Marvin Ness initially requested the Township Board install a culvert under the Road near the northwest corner of Section 35. On September 22, 1994, apparently under the impression they were required to do so, the Township Board applied to the District for a culvert permit. We acknowledge the Record is replete with references to the District's "recommendations" as to the culvert's depth and location. The minutes from District board meetings on February 12, March 18, and April 8, 1996, however, clearly reflect the decision was being considered by representatives of the District, not the Township Board. Moreover, it was the District's orders on July 8, ·1996, and May 18, 1997, which mandated the depth and location of the culvert. From the time the Township Board applied to the District for a culvert permit, the decision whether to install a culvert, and its depth and location, was solely in the hands of the District. Under *Kadlec*, the

District clearly had no authority to make that decision in this case.

[¶ 17] Clearly, the Legislature envisioned township and water resource district boards working together on such decisions. *See* N.D.C.C. §§ 24–06–34 & 61–16.1–09(21). The Legislature has also made it clear, however, that a board of township supervisors, not a water resource district, has the authority to install culverts beneath township roads when necessary to preserve the natural drainage of surface waters. *Kadlec*, 1998 ND 165, ¶¶ 13–15, 583 N.W.2d 817; N.D.C.C. § 24–03–06.

### III

[¶ 18] We conclude the District lacked authority to make the final decision under the facts in this case. The district court's amended judgment affirming the District's order is therefore reversed, and the case is remanded with directions the district court order the District to vacate its order.

[¶ 19] VANDE WALLE, C.J., NEUMANN and SANDSTROM, JJ., and BENNY A. GRAFF, District Judge, concur.

[¶ 20] BENNY A. GRAFF, District Judge, sitting in place of MESCHKE, J., disqualified, who retired effective October 1, 1998.

---

2. The record reflects the parties at various times referred to the permit which the District was considering as a "drainage permit." This is not a drainage case, however. We have previously held maintaining a drainway in its natural state does not require a drainage permit. *See Nilson v. Markestad*, 353 N.W.2d 312, 314 (N.D.1984) (interpreting N.D.C.C. § 61–01–22 (now repealed), which is now embodied in § 61–32–03, *see Matter of Stone Creek Channel Improvements*, 424 N.W.2d 894, 896–97 n.2 (N.D. 1988)). Jim Lindseth of the State Water Commission recognized as much in a December 1, 1994, letter, in which he informed the District that although the drainage area for this project was greater than 80 acres, "a permit is not required to maintain natural or permitted drains, provided channel hydraulics are not changed by deepening or widening." Since "the wetlands located within this drainage area are linked together by natural or constructed drains," Mr. Lindseth concluded no drainage permit would be required.