2000 ND 182

**BURLINGTON NORTHERN AND SAN-
TA FE RAILWAY COMPANY, Ron-
ald Hausmann, Lila Hausmann, Don-
ald Haugen, and Charles Studness,
Appellants,**

v.

**BENSON COUNTY WATER
RESOURCE DISTRICT,
Appellee.**

Nos. 990368-990373, 990378-990380.

Supreme Court of North Dakota.

Oct. 26, 2000.

Daniel J. Crothers, Nilles, Hansen & Davies, Ltd., Fargo, for appellants Burlington Northern and Santa Fe Railway Company, Duane R. Breitling and Steven E. McCullough, Ohnstad Twichell, Fargo, for appellants Ronald Hausmann, Lila Hausmann, and Donald Haugen, and Joseph J. Cichy, Olson Cichy, Bismarck, for appellant Charles Studness.

Michael A. Dwyer, Dwyer Law Office, Bismarck, for appellee.

KAPSNER, Justice.

[¶ 1] Burlington Northern and Santa Fe Rail Railway Company ("BN"); Ronald Hausmann and Lila Hausmann ("Hausmanns"); Donald Haugen; and Charles Studness appealed a district court order of October 6, 1999, and judgment of October 14, 1999, affirming revised findings of fact, conclusions of law, and order issued by the Benson County Water Resource District ("District") on May 4, 1999, requiring the installation of culverts through a township road and a railroad. We conclude the District exceeded its authority, and we reverse.

I

[¶ 2] A recent wet cycle has resulted in high water levels throughout the Devils Lake Basin. This matter concerns flooding and water management in and around Normania Township in Benson County. Two wetlands—one identified as Slough A in Sections 3 and 4 in Normania Township and one identified as Hausmann Slough in Section 34 of Irvine Township—are involved. A BN railroad track and U.S. Highway No. 2 lie between the two wetlands, and a township road runs through Slough A.

[¶ 3] The District conducted a public hearing in 1998 to receive information about flooding. On March 17, 1999, the District held a hearing to receive additional evidence. The District found:

6. The Burlington Northern–Santa Fe Railroad serves as an obstruction to the natural flow of water.

. . . .

8. The installation of a culvert or pipe through the BNSF railroad would allow the water in Slough A to flow in its natural course to the north and east, eventually reaching Hausmann Slough.

9. Slough A is divided by a north/south township road which runs between Sections 3 and 4 of Normania Township. This township road obstructs the natural flow of water in a southeasterly direction from Slough A.

The District ordered:

1. A 24 inch diameter corrugated metal pipe is recommended to be installed through the north-south township road approximately 1000 feet north of

the section corner common to Sections 3, 4, 9 and 10 of Normania Township. . . .

. . . .

3. A 24 inch diameter opening shall be installed through the BNSF railroad. The type of opening (metal or concrete) shall be determined by the BNSF Railroad Co. The opening shall be installed at ground elevation, but not higher than the natural outflow elevation of 1469.9 msl. The opening shall be located approximately 1525 feet east from the section line common to Section 3 and 4 of Normania Township.

4. The openings and other actions required under this order shall be installed or completed in a simultaneous manner (at the same time).

[¶ 4] The district court affirmed the District's order and these appeals were taken. BN contends the District's order should be vacated. Hausmanns and Haugen contend the district court judgment should be reversed and the District's order vacated to the extent it orders BN to install a culvert under its railroad track. Studness contends the judgment should be reversed with regard to the District's order for installation of a culvert in the township road and affirmed with regard to the District's order for a culvert under BN's railroad track. The District contends the district court judgment should be affirmed.

## II

[¶ 5] Our scope of review in appeals involving decisions of water resource districts is limited:

"In an appeal from the decision of a local governing body under N.D.C.C. § 28-34-01, our scope of review is the same as the district court's and is very limited. *Pic v. City of Grafton,* 1998 ND 202, ¶¶ 6, 8, 586 N.W.2d 159. Our function is to independently determine the propriety of the decision, without according any special deference to the district court's decision, and unless the Board acted arbitrarily, capriciously or unreasonably, or there is not substantial evidence to support the decision, it must be affirmed. *Anderson v. Richland County Water Res. Bd.,* 506 N.W.2d 362, 367 (N.D.1993). A decision is not arbitrary, capricious or unreasonable if the exercise of discretion is the product of a rational mental process by which the facts and the law relied upon are considered together for the purpose of achieving a reasoned and reasonable interpretation."

*Graber v. Logan County Water Res. Bd.,* 1999 ND 168, ¶ 7, 598 N.W.2d 846. "A commission's failure to correctly interpret and apply controlling law is arbitrary, capricious, and unreasonable." *Gullickson v. Stark County Bd. of County Comm'rs,* 474 N.W.2d 890, 892 (N.D.1991).

## III

[¶ 6] The District argues "the broad authority given to water resource districts in N.D.C.C. § 61-16.1-09(5-7), along with the provisions of N.D.C.C. §§ 61-16.1-09(21) and 61-01-07, when read in context with N.D.C.C. § 61-16.1-42, should result in the interpretation that water resource districts have the authority to order necessary openings through railroads." The District argues "this case is a logical extension" of our decision in *Southeast Cass Water Res. Dist. v. Burlington Northern R.R. Co.,* 527 N.W.2d 884 (N.D.1995).

[¶ 7] Water resource boards "are political subdivisions of the State of North Dakota." *Anderson v. Richland County Water Res. Bd.,* 506 N.W.2d 362, 366 (N.D. 1993). "The legislative assembly shall provide by law for the establishment and the government of all political subdivisions. Each political subdivision shall have and exercise such powers as provided by law." N.D. Const. art. VII, § 2. A political subdivision's "rights and powers are determined and defined by law." *Eikevik v. Lee,* 73 N.D. 197, 203, 13 N.W.2d 94, 97 (1944). "[D]rainage boards are creatures of statute, and they have no powers except such as are expressly granted by the stat-

ute or reasonably implied from the powers granted." *Freeman v. Trimble*, 21 N.D. 1, 9, 129 N.W. 83, 87 (1910). *See also* 5 *Waters and Water Rights* § 59–04(b)(3) (Robert E. Beck ed., 1991 ed., 1998 repl.) ("[Drainage] districts have only such powers as have been delegated to them by the enabling legislation.").

[¶ 8] "[A] water resource district's statutory powers are found in Title 61 [N.D.C.C.]." *Ness v. Ward County Water Res. Dist.*, 1998 ND 191, ¶ 12, 585 N.W.2d 793. Section 61–01–07, N.D.C.C., provides:

> If any person illegally obstructs any ditch, drain, or watercourse, or diverts the water therein from its natural or artificial course, the person is liable to the party suffering injury from the obstruction or diversion for the full amount of the damage done, and, in addition, is guilty of a class B misdemeanor.

Section 61–16.1–09, N.D.C.C., provides, in part:

> Each water resource board shall have the power and authority to:
>
> . . . .
>
> 5. Plan, locate, relocate, construct, reconstruct, modify, maintain, repair, and control all dams and water conservation and management devices of every nature and water channels, and to control and regulate the same and all reservoirs, artificial lakes, and other water storage devices within the district.
>
> 6. Maintain and control the water levels and the flow of water in the bodies of water and streams involved in water conservation and flood control projects within the district and regulate streams, channels, or watercourses and the flow of water therein by changing, widening, deepening, or straightening the same, or otherwise improving the use and capacity thereof.
>
> 7. Regulate and control water for the prevention of floods and flood damages by deepening, widening, straightening, or diking the channels or floodplains of any stream or watercourse within the district, and construct reservoirs or other structures to impound and regulate such waters.
>
> . . . .
>
> 21. Coordinate proposals for installation, modification, or construction of culverts and bridges in an effort to achieve appropriate sizing and maximum consistency of road openings. The department of transportation, railroads, counties, and townships shall cooperate with the districts in this effort. Each district shall also consider the possibility of incorporating appropriate water control structures, where appropriate, as a part of such road openings.

Section 61–16.1–42, N.D.C.C., provides:

> Drains may be laid along, within the limits of, or across any public road or highway, but not to the injury of such road. In instances where it is necessary to run a drain across a highway, the department of transportation, the board of county commissioners, or the board of township supervisors, as the case may be, when notified by the water resource board to do so, shall make necessary openings through the road or highway at its own expense, and shall build and keep in repair all required culverts or bridges as provided under section 61–16.1–43. In instances where drains are laid along or within the rights of way of roads or highways, the drains shall be maintained and kept open by and at the expense of the water resource district concerned. A drain may be laid along any railroad when necessary, but not to the injury of the railroad, and when it is necessary to run a drain across the railroad, the railroad company, when noti-

fied by the water resource board to do so, shall make the necessary opening through such railroad, shall build the required bridges and culverts, and shall keep them in repair.

## A

[¶ 9] We have construed those statutes as providing water resource boards with authority to direct townships to install culverts to accommodate drains established by law, but not in natural watercourses or to preserve a natural drainway for surface waters. "[T]ownship boards, and not water resource districts, have supervisory authority under N.D.C.C. § 24–03–06 to decide whether to install a culvert beneath a township road to preserve a natural drainway for surface waters." *Ness v. Ward County Water Res. Dist.,* 1998 ND 191, ¶ 13, 585 N.W.2d 793.

> While water resource districts have been given broad powers to control waters within their jurisdictions, *see* N.D.C.C. § 61–16.1–09(5–7) and (16), they have not been given authority to make the decision to install a culvert under a township road in a natural watercourse. Rather, water resource districts have the authority to direct a township to install a culvert to accommodate a drain."

*Kadlec v. Greendale Tp. Bd. of Tp. Supervisors,* 1998 ND 165, ¶ 15, 583 N.W.2d 817. Reliance on *Southeast Cass Water Res. Dist. v. Burlington Northern R.R. Co.,* 527 N.W.2d 884 (N.D.1995), is misplaced. In that case, we concluded "NDCC 61–16.1–42 constitutionally places upon BN Railroad the continuing responsibility for the costs of accommodating its track to necessary drainage improvements." *Southeast Cass,* at 885. However, that case involved drainage improvements to a drain established by law along a natural channel. We conclude the District did not have authority to order installation of a culvert in the township road.

## B

[¶ 10] We turn now to the District's authority to order BN to install a culvert. Section 61–16.1–01, N.D.C.C., broadly states the legislative purpose in establishing water resource districts:

> The legislative assembly of North Dakota recognizes and declares that the general welfare and the protection of the lives, health, property, and the rights of all people of this state require that the management, conservation, protection, development, and control of waters in this state, navigable or nonnavigable, surface or subsurface, the control of floods, the prevention of damage to property therefrom, involve and necessitate the exercise of the sovereign powers of this state and are affected with and concern a public purpose. To realize these objectives it is hereby declared to be the policy of the state to provide for the management, conservation, protection, development, and control of water resources and for the prevention of flood damage in the watersheds of this state and thereby to protect and promote the health, safety, and general welfare of the people of this state.

> The legislative assembly further recognizes the significant achievements that have been made in the management, conservation, protection, development, and control of our water and related land resources, and declares that the most efficient and economical method of accelerating these achievements is to establish water resource districts encompassing all of the geographic area of the state, and emphasizing hydrologic boundaries.

Sections 61–01–07, 61–16.1–09(5), (6), (7), (21), and 61–16.1–42, N.D.C.C., relied on by the District, somewhat less expansively give water resource districts broad authority to control water in channels, water storage devices, conservation and flood control projects, streams, watercourses, ditches, and drains. The District did not

find the surface waters involved in this case fall within any of these terms.

[¶ 11] Article XI, § 3, N.D. Const., provides: "All flowing streams and natural watercourses shall forever remain the property of the state for mining, irrigating and manufacturing purposes." That provision applies "only to the waters of flowing streams and natural water courses." *Ozark–Mahoning Co. v. State*, 76 N.D. 464, 37 N.W.2d 488, 493 (1949). The District did not find the water involved here is a stream or watercourse. "[T]he strict wording of" our constitutional provision "would not make it applicable to . . . diffuse . . . surface water." Nancy Jean Strantz, *Rights to Ground Water in North Dakota: Trends and Opportunities*, 71 N.D. L.Rev. 619, 627 n. 25. Diffused surface water has been defined as "[w]ater lying or flowing on the surface of the earth, but not confined to any waterbody, and including floodwater that has escaped from a stream channel, or water resulting from snowmelt, rainfall, or seepage, that is moving overland towards a stream or other waterbody." 6 *Waters and Water Rights* 903 (Robert E. Beck ed., 1991 ed., 1994 Repl.).

[¶ 12] Under N.D.C.C. § 61–01–01, surface waters, except diffused surface waters, "belong to the public and are subject to appropriation." Unlike the law relating to appropriating for use or consumption the water in streams or watercourses, "the law of diffused surface waters is more concerned with liability for damage suffered than it is with use rights in and to the water." 9 *Powell on Real Property*, § 65.02[iii], p. 65–26 (Michael Allan Wolf, ed., 2000). With regard to harm caused by diffused surface water, "[o]rdinarily, the rule of reason is applied in a fashion traditional to nuisance or general tort law." *Id.* at p. 65–27.

[¶ 13] Neither an owner of upper land nor an owner of lower land may interfere with natural drainage so as to injure the rights of the other. *Kadlec v. Greendale Tp. Bd. of Tp. Supervisors*, 1998 ND 165, ¶ 18, 583 N.W.2d 817. We have adopted the reasonable use rule for landowner management of diffused surface waters. *See, e.g., Martin v. Weckerly*, 364 N.W.2d 93, 94 (N.D.1985) (stating "[t]he reasonable-use rule is applied by courts in reconciling conflicting uses of surface water and the land over which it flows" and one's use of property "must be reasonable so as not to cause unnecessary injury to others"); *Henderson v. Hines*, 48 N.D. 152, 159, 183 N.W. 531, 534 (1921) (holding that, with regard to surface waters, a landowner has the right to use his own property in such a manner as not to injure that of another). *See also Jacobsen v. Pedersen*, 190 N.W.2d 1 (N.D.1971) (citing *Armstrong v. Francis Corp.*, 20 N.J. 320, 120 A.2d 4 (1956) and *Enderson v. Kelehan*, 226 Minn. 163, 32 N.W.2d 286 (1948)), and *Jones v. Boeing Co.*, 153 N.W.2d 897 (N.D. 1967). This Court has held drainage is governed by the reasonable use rule when the provisions of N.D.C.C. § 61–01–22 (requiring a permit to drain a pond, slough, or lake draining an area of 80 acres or more) did not apply. *Young v. Hamilton*, 332 N.W.2d 237, 240 (N.D.1983).[1] "The question for North Dakota . . . is whether anything more than this basic principle concerning land use governs drainage problems. The answer given generally in *Jones* [*v. Boeing Co.*, 153 N.W.2d 897 (N.D.1967) ] is 'No, that is it.' " Robert E. Beck and Bruce E. Bohlman, *Drainage Law in North Dakota: An Overview*, 47 N.D. L.Rev. 471, 477 (1971). Our decisions applying the reasonable use rule for landowner management of diffused surface waters have not involved governmental regulation.

---

1. A similar requirement is now contained in N.D.C.C. § 61–32–03, which requires a permit to drain a pond, slough, lake, or sheetwater (defined as "shallow water that floods land not normally subject to standing water") with a watershed of 80 acres or more. The District's decision in this case was not based upon that statute.

[¶ 14] In light of the limiting language used in specifying the authority of water resource districts, our history of applying the reasonable use rule for landowner management of diffused surface waters without governmental regulation, and the lack of legislative definition of many of the terms used in specifying the authority of water resource districts, we are reluctant to construe N.D.C.C. § 61–16.1–42 to authorize the District to order BN to install a culvert through the bed of its railroad track. Without a more explicit legislative declaration of an intent to extend the power and authority of water resource districts to manage diffused surface waters, we decline the District's invitation to so broadly construe the reach of N.D.C.C. § 61–16.1–42. We conclude the District did not have authority to order BN to install a culvert through the bed of its railroad track.[2]

[¶ 15] We need not address other issues the parties have raised, as answers to those questions are not necessary to the determination of this appeal. *Seela v. Moore*, 1999 ND 243, ¶ 11, 603 N.W.2d 480.

[¶ 16] The order and judgment are reversed.

[¶ 17] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, WILLIAM A. NEUMANN, DALE V. SANDSTROM, JJ., concur.

**2.** While we conclude the District lacks authority to order BN to install a culvert through the bed of its railroad track, this conclusion does not foreclose consideration of the matter in another forum. *See, e.g., Fandrich v. Wells County Bd. of County Comm'rs*, 2000 ND 181, 618 N.W.2d 166; *Martin v. Weckerly*, 364 N.W.2d 93 (N.D.1985); *Henderson v. Hines*, 48 N.D. 152, 183 N.W. 531 (1921).