2006 ND 214

**Ervin EICHHORN, Petitioner
and Appellant**

v.

**The WALDO TOWNSHIP BOARD OF
SUPERVISORS, COUNTY OF RICH-
LAND, State of North Dakota, and
Harry Emde, Robert M. "Shotz" Kinn,
and Gerald Wirtz, constituting the
members of said board and the duly
designated Waldo Township Overseers
of Highways, Respondents and Appel-
lees**

and

**The Richland County Water Resource
District, a body politic and corporate,
Intervenor and Appellee.**

No. 20050295.

Supreme Court of North Dakota.

Oct. 17, 2006.

Rehearing Denied Nov. 7, 2006.

Jonathan T. Garaas, Garaas Law Firm, Fargo, ND, for petitioner and appellant.

Corey J. Quinton, Oppegard, Wolf & Quinton, Moorhead, MN, for respondents and appellees.

Duane R. Breitling, Ohnstand Twichell, P.C., Fargo, ND, for intervenor and appellee.

SANDSTROM, Justice.

[¶ 1]   Ervin Eichhorn appealed from a district court order permitting the Richland County Water Resource District ("District") to intervene in his action against Waldo Township ("Township") and from a judgment dismissing his petition for a writ of mandamus to compel the Township to install a larger culvert under a township road.   We hold the district court did not err in permitting the District to intervene and did not abuse its discretion in denying Eichhorn's request for a writ of mandamus.   We affirm.

I

[¶ 2]   Eichhorn owns Richland County land described as the northeast quarter of section 13, township 130 north, range 49 west, in Waldo Township.   The northeast corner of Eichhorn's land is bordered by

two Township roads, an east-west road along the northern edge and a north-south road along the eastern edge of his property.

[¶ 3] Richland County Drain No. 65 ("Drain 65") runs north and south along the western edge of section 13 and is located one mile west of the northeast corner of section 13. A lateral drain, which flows into the main channel of Drain 65 at a 90–degree angle, runs along the northern edge of section 13 for a distance of one mile. Drain 65 and its lateral drain were established under a July 14, 1960, "Amended Order Establishing Drain" issued by the Richland County Water Conservation and Flood Control Commission. Drain 65 and the lateral drain were designed to change the water flow in the northern part of section 13 to flow from east to west. The lateral drain enters the main channel of Drain 65 through two 36–inch culverts with "flap-gates." Additionally, a right-of-way deed dated September 27, 1960, was executed by Ervin Eichhorn's parents and predecessors in interest, Floyd and Clara Eichhorn, granting Richland County a right-of-way "for the laying out, construction, and maintenance of a public drain" in the northeast quarter of section 13, described in part as:

BEGINNING AT A POINT 33 FEET WEST AND 33 FEET SOUTH OF THE NORTHEAST CORNER OF SECTION 13–130–49; THENCE SOUTH A DISTANCE OF 33 FEET; THENCE WEST A DISTANCE OF 2607 FEET; THENCE NORTH A DISTANCE OF 33 FEET; THENCE EAST A DISTANCE OF 2607 FEET TO THE POINT OF BEGINNING AND CONTAINING 2.0 ACRES, MORE OR LESS.

[¶ 4] A 30–inch culvert also presently exists under the east-west Township road in the northeast corner of Ervin Eichhorn's land in section 13. The record reflects this culvert initially was not part of the lateral drain but was installed by Waldo Township at the request of the Richland County Water Management District after November 1965. According to the November 9, 1965, minutes of a meeting of the Board of Commissioners of the Richland County Water Management District, the Board passed a motion indicating that in order to provide "some temporary relief" from a drainage problem to Floyd Eichhorn, a culvert should be installed in the northeast corner of section 13 and one approach should be removed along the north side of the northwest quarter of section 13 on the lateral to Drain 65. The minutes also state the Board would pay for the removal of the approach and Waldo Township would install the culvert.

[¶ 5] Ervin Eichhorn claimed a history of flooding on his property. In May 1998, he filed a complaint with the District, asserting there was an "unauthorized construction of a dike, dam or other device for purposes of water conservation, flood control, regulation, watershed improvement for storage of water." Eichhorn claimed "those dikes, or roads acting as dikes because of inadequate culverts, have not received the necessary permit and, therefore, pursuant to the statute must be removed." In a subsequent letter clarifying his complaint, Eichhorn explained "[t]he dikes between Section 1 and 6, the dike in Section 31, and the road without adequate culverts between Section 13 and 18 act as dikes forcing more than 12½ acre feet of water through an unnatural course which is prohibited absent a permit." The District denied Eichhorn's request for removal of the "dikes." Eichhorn appealed the District's decision to the district court, but in 1999, he stipulated to a dismissal with prejudice of his appeal.

[¶ 6] In 2001, because of continuing concerns about flooding on his property, Eichhorn requested the State Engineer to determine the appropriate stream crossing standards under N.D.C.C. § 24–03–08 for the northeast corner of section 13. In a November 5, 2001, letter, State Engineer Dale Frink responded that based upon the appropriate stream crossing standards, "the minimum design event for culverts through the township road located on the north edge of Section 13 is a 10–year event. . . . The flow for the 10–year event at the northeast corner of Section 13 was determined to be 51 cfs [cubic feet per second]." Eichhorn also obtained calculations from the State Engineer's representative, Randy Gjestvang, which indicated a possible solution to meet the discharge requirement of 51 cfs was the installation of a 42–inch culvert in place of the existing 30–inch culvert.

[¶ 7] In April 2002, Eichhorn, through his counsel, sent a letter to the Township and the District, notifying them of the State Engineer's determination under N.D.C.C. § 24–03–08 and requesting the Township take action to make the culvert in the northeast corner meet these standards. When no action was taken, Eichhorn sent another letter to the Township and the District to remind each governmental entity of their statutory obligations and his need for relief. Neither the Township nor the District responded.

[¶ 8] The District, however, did seek assistance from the State Engineer by requesting comments regarding whether, based on the State Engineer's November 5, 2001, letter, specific proposed improvements to Drain 65 would meet the design criteria for the stream crossing, particularly because the northern edge of section 13 also included the lateral drain. In an October 10, 2002, letter, the State Engineer stated:

The statute [N.D.C.C. § 24–03–08] does not direct the State Engineer to design or size the crossing. The design process is more appropriately the responsibility of the road or drain authority.

In this particular case, it would appear that improvements that allow the water to more efficiently enter Drain # 65 may be the best alternative for all parties. Some of the alternatives under consideration may require a permit.

[¶ 9] In late 2002, Eichhorn began this action against the Township for a writ of mandamus to compel the Township to install a larger culvert in the Township road under N.D.C.C. §§ 24–03–06 and 24–03–08. The District moved to intervene, contending the proposed culvert was part of the lateral drain to Drain 65, over which the District has authority and jurisdiction. The district court permitted the District to intervene. In October 2004, the District moved for summary judgment, arguing Eichhorn's action was barred by res judicata based upon his 1999 stipulated dismissal of his appeal of the District's prior denial of his request for removal of "dikes." The district court denied the District's motion as untimely.

[¶ 10] At a November 2004 hearing, Eichhorn presented testimony from Bruce Miller, who was Eichhorn's tenant on the property in 2003 and 2004. Miller had documented significant flooding that occurred on Eichhorn's property in June 2003 after approximately seven to nine inches of rain had fallen during the night. The District and Township presented testimony from the District's engineer for Drain 65 and from a representative from the state engineer's office who had conducted the investigation and drafted the letters for the state engineer. The district court denied Eichhorn's request for a writ of mandamus and a judgment was entered dismissing his action.

[¶ 11] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. §§ 27–05–06 and 32–34–01. Eichhorn's appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. §§ 28–27–01 and 28–27–02.

## II

[¶ 12] Eichhorn argues the district court erred in allowing the District to intervene in this mandamus action under N.D.R.Civ.P. 24(a), which governs a party's intervention as a matter of right, and states:

> Upon timely application anyone must be permitted to intervene in an action if: (i) a statute confers an unconditional right to intervene; or (ii) the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

[¶ 13] In considering whether a party may intervene in an action as a matter of right under N.D.R.Civ.P. 24(a), we review any findings of fact made by the district court under the clearly erroneous standard of review in N.D.R.Civ.P. 52(a). *See State v. Family Life Servs., Inc.,* 1997 ND 37, ¶ 6, 560 N.W.2d 526. However, the ultimate question whether a party has a right to intervene is a question of law that is fully reviewable on appeal. *See id.; Fisher v. Fisher,* 546 N.W.2d 354, 355 (N.D.1996). Intervention has historically been liberally granted in North Dakota. *See Braatelien v. Burns,* 74 N.D. 29, 32, 19 N.W.2d 827, 828 (1945).

[¶ 14] Here, the district court specifically found: "Although [Eichhorn] argues that the Culvert Site [in the northeast corner of Section 13] is independent of Drain # 65, the state engineer has clearly indicated the impact of a new culvert will cause the flow of water to enter into the drain which [the District] is mandated to maintain." The court also quoted from the November 2001 letter from State Engineer Frink to Eichhorn, which stated: "The drainage pattern in this area has been altered. Richland County Drain # 65, located one mile west of the site, intercepts much of the runoff that would have naturally flowed to this area." The court concluded, because the District has a statutory obligation to maintain Drain 65, it "logically follows" that the District has an interest in the flow patterns which might affect the drain, and the alternative plans contemplated by the state engineer's letters would affect Drain 65.

[¶ 15] Although Eichhorn argues the District had no right to intervene in this mandamus action and its interests would be adequately represented by the Township, we agree with the district court's analysis in permitting the District to intervene. The lateral drain to Drain 65 runs along the northern edge of section 13, and changing the culvert in the northeast corner of section 13 would likely affect the water flow involving Drain 65. The District has jurisdiction of Drain 65 and its drainage area, and the District is required to maintain the drains within its jurisdiction, particularly when laid within the limits of a public road. Section 61–16.1–42, N.D.C.C., which permits drains to "be laid along, within the limits of, or across any public road or highway," states: "In instances where drains are laid along or within the rights of way of roads or highways, the drains shall be maintained and kept open by and at the expense of the water resource district concerned." *See also* N.D.C.C. § 61–21–31.

[¶ 16] The district court properly concluded the District has an interest relating to the "property or transaction that is the subject of the action" under N.D.R.Civ.P. 24(a), and the District is so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest. As a matter of law, we conclude the District has a right to intervene in this action, and the district court did not err in permitting the intervention.

### III

[¶ 17] Eichhorn argues the district court erred in denying his petition for a writ of mandamus.

[¶ 18] Section 32–34–01, N.D.C.C., governs the issuance of a writ of mandamus, and provides:

> The writ of mandamus may be issued by the supreme and district courts to any inferior tribunal, corporation, board, or person to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station. . . .

[¶ 19] A petitioner for a writ of mandamus must demonstrate a "clear legal right" to performance of the particular act sought to be compelled by the writ. *Ward County Farm Bureau v. Poolman*, 2006 ND 42, ¶ 8, 710 N.W.2d 423. The petitioner must further demonstrate there is no other plain, speedy, and adequate remedy in the ordinary course of law. *Wutzke v. Hoberg*, 2004 ND 42, ¶ 3, 675 N.W.2d 179. A writ of mandamus may be issued to compel official action by a governmental entity but not to compel an official's discretionary actions. *See Midland Produce Co. v. City of Minot*, 70 N.D. 256, 257, 294 N.W. 192, 193 (1940) (writ of mandamus will not lie unless the legal right to performance of the particular act sought to be compelled is clear and complete and will not lie to control official discretion). To be enforceable by mandamus, the duty must be clearly and preemptively enjoined by law; the law must not only authorize the act, but must require it to be done. *Id.*

[¶ 20] The issuance of a writ of mandamus is left to the district court's sound discretion. *Kenmare Educ. Ass'n v. Kenmare Pub. Sch. Dist.*, 2006 ND 136, ¶ 9, 717 N.W.2d 603; *Wutzke*, 2004 ND 42, ¶ 3, 675 N.W.2d 179. A district court abuses its discretion if its decision is arbitrary, capricious, or unreasonable, if it misapplies or misinterprets the law, or if it is not the product of a rational mental process by which the facts and the law relied upon are considered together for the purpose of achieving a reasoned and reasonable interpretation. *See Kenmare Educ. Ass'n*, at ¶ 9; *Fandrich v. Wells County Bd. of County Comm'rs*, 2000 ND 181, ¶ 7, 618 N.W.2d 166.

[¶ 21] In deciding whether the district court abused its discretion in denying Eichhorn's request for a writ of mandamus, we must examine whether Eichhorn had a "clear legal right" to require the Township to install a larger culvert under the Township road.

[¶ 22] The statutory powers of the Township and the District are found in N.D.C.C. Titles 24 and 61, respectively. The issue here involves the interplay of township powers and obligations with those of a water resource district and how these joint obligations are met when the state engineer, under the authority of N.D.C.C. § 24–03–08, has determined the stream crossing standards for a particular piece of affected property. Sections 24–03–06 and 24–03–08, N.D.C.C., impose a duty upon a township to construct or reconstruct township roads in a way that does not obstruct the natural flow and

drainage of surface waters. *See, e.g., Fandrich,* 2000 ND 181, ¶ 19, 618 N.W.2d 166; *Ness v. Ward County Water Res. Dist.,* 1998 ND 191, ¶ 14, 585 N.W.2d 793; *Kadlec v. Greendale Twp. Bd. of Twp. Supervisors,* 1998 ND 165, ¶ 18, 583 N.W.2d 817. Specifically, N.D.C.C. § 24–03–08 (emphasis added) provides:

Whenever and wherever a highway under the supervision, control, and jurisdiction of the department or under the supervision, control, and jurisdiction of the board of county commissioners of any county or the board of township supervisors has been or will be constructed over a watercourse or draw into which flow surface waters from farmlands, the state engineer, upon petition of the majority of landowners of the area affected or at the request of the board of county commissioners, township supervisors, or a water resource board, shall determine as nearly as practicable the design discharge that the crossing is required to carry to meet the stream crossing standards prepared by the department and the state engineer. *When the determination has been made by the state engineer,* the department, the board of county commissioners, or *the board of township supervisors, as the case may be, upon notification of the determination, shall install a culvert or bridge of sufficient capacity to permit the water to flow freely and unimpeded through the culvert or under the bridge.* The department, county, and township are not liable for any damage to any structure or property caused by water detained by the highway at the crossing if the highway crossing has been constructed in accordance with the stream crossing standards prepared by the department and the state engineer.

[¶ 23] In *Fandrich,* 2000 ND 181, ¶¶ 21–22, 618 N.W.2d 166, this Court summarized the effect and legislative intent of these statutes:

Effective August 1, 1999, the Legislature amended N.D.C.C. §§ 24–03–06 and 24–03–08. Section 24–03–06, N.D.C.C., was amended to replace the requirement that highways be constructed in accordance with "scientific highway construction and engineering," with the phrase, "the stream crossing standards prepared by the department and the state engineer. . . ." 1999 N.D. Sess. Laws ch. 248, § 1. The statute was also amended to provide "[i]n the construction of highways the natural flow and drainage of surface waters *to the extent required to meet the stream crossing standards prepared by the department and the state engineer* may not be obstructed. . . ." *Id.* (amended language emphasized). The statute was further amended to protect government entities and others from liability for damages "caused to any structure or property by water detained by the highway at the crossing if the highway crossing has been constructed in accordance with the stream crossing standards prepared by the department and the state engineer." *Id.* Section 24–03–08, N.D.C.C., was similarly amended to delete reference to the "maximum quantity of water, in terms of second feet, which such watercourse or draw may be required to carry," and replace it with the phrase, "design discharge that the crossing is required to carry to meet the stream crossing standards prepared by the department and the state engineer." 1999 N.D. Sess. Laws ch. 248, § 2. It was further amended to prohibit damage liability "if the highway crossing has been constructed in accordance with the stream crossing standards prepared by the department and the state engineer." *Id.*

The legislative history of the amendments reflects the reason for the

changes was to promote uniformity throughout the state by having stream crossing standards prepared by the Department of Transportation and the state engineer. *See Hearing on H.B. 1310 Before the Senate Political Subdivisions Committee,* 56th N.D. Leg. Sess. (February 26, 1999) (testimony of State Engineer David Sprynczynatyk). Local political subdivisions were uncertain about their engineering responsibilities. Because a road cannot be engineered to take into consideration all conceivable flood events, the political subdivisions were forced to perform "a balancing act between landowners['] rights and the economics of maintaining quality roads at a price the township can afford." *Hearing on H.B. 1310 Before the House Political Subdivisions Committee,* 56th N.D. Leg. Sess. (January 21, 1999) (testimony of Ted D. Seibel, Wells County State's Attorney). Subsequent amendments to statutes may be used in ascertaining the legislative intent of earlier versions of the statutes. *See, e.g., Effertz v. North Dakota Workers Compensation Bureau,* 525 N.W.2d 691, 693 (N.D.1994). The amendments to the statutes suggest the concept of reasonableness permeates the statutory mandates, and the amendments merely assigned the responsibility for determining the measure of reasonableness to the Department of Transportation and the state engineer.

[¶ 24] Although a township may not construct or reconstruct township roads to obstruct the natural flow and drainage of surface waters, there is no duty to provide "perfect" drainage. *See Huber v. Oliver County,* 1999 ND 220, ¶ 17, 602 N.W.2d 710; *Little v. Burleigh County,* 82 N.W.2d 603, 613 (N.D.1957). There is an implied standard of reasonableness in applying N.D.C.C. §§ 24–03–06 and 24–03–08. *Fandrich,* 2000 ND 181, ¶ 20, 618 N.W.2d 166. In *Fandrich,* at ¶ 23 (internal quotations omitted), prior to the formal promulgation of stream crossing standards, this Court explained that for purposes of a reasonableness analysis, the stream crossing standards "qualify as evidence of established engineering standards or sound engineering design practice." We have also recognized that it is neither practical nor feasible to provide drainage structures sufficient to cope with cataclysmic events. *Huber,* 1999 ND 220, ¶ 17, 602 N.W.2d 710.

[¶ 25] Our statutes also envision cooperation between townships and water resource district boards. *See, e.g., Ness,* 1998 ND 191, ¶ 17, 585 N.W.2d 793 (citing N.D.C.C. §§ 24–06–34 and 61–16.1–09(21)). Under N.D.C.C. § 24–03–06, township boards, not water resource districts, have supervisory authority to decide whether to install a culvert beneath a township road to preserve a natural drainway for surface waters. *Burlington Northern and Santa Fe Ry. Co. v. Benson County Water Res. Dist.,* 2000 ND 182, ¶ 9, 618 N.W.2d 155 (quoting *Ness,* at ¶ 13). "While water resource districts have been given broad powers to control waters within their jurisdictions, *see* N.D.C.C. § 61–16.1–09(5–7) and (16), they have not been given authority to make the decision to install a culvert under a township road in a natural watercourse. Rather, water resource districts have the authority to direct a township to install a culvert to accommodate a drain." *Burlington Northern,* at ¶ 9 (quoting *Kadlec,* 1998 ND 165, ¶ 15, 583 N.W.2d 817).

[¶ 26] In denying Eichhorn's petition for a writ of mandamus, the district court found:

    5. Section 61–21–31 of N.D.C.C. authorizes the construction of drains within the limits of or across any public road

or highway, but not to the injury of such road.

6. Richland County Drain # 65 is a legal drain established pursuant to the provisions of Chapter 61–21 of the North Dakota Century Code and as such the jurisdiction and control over this legal drain is vested in the Richland County Water Resource District.

7. A part of Richland County Drain # 65 consists of a 1 mile long East to West channel, located on the North edge of Section Thirteen (13), Township One Hundred Thirty (130), Range Forty-nine (49), Richland County, North Dakota.

8. By Right–of–Way Deed dated September 27, 1960, Richland County procured two (2) acres of right-of-way on the North edge of the Northeast Quarter (NE 1/4) of said Section Thirteen (13). Said Right–of–Way Deed was duly recorded by the Richland County Register of Deeds. The Right–of–Way Grantors were the parents of the Petitioner in the case before the Court.

9. The design and plans for the aforementioned one mile long East–West channel, located on the North edge of [section 13] provided for the flow of surface water from the Northeast corner of [section 13] westerly one mile to the main channel of Richland County Drain # 65.

10. The design and plans for this legal drain provide for NO North–South culvert at the Northeast corner of said Section Thirteen (13).

11. A representative of the Office of the State Engineer performed an investigation as to runoff patterns and a hydrological analysis of the surface water runoff that migrated to the northeast corner of Section 13 in Waldo Township for the purpose of determining a ten (10) year reoccurrence interval.

12. A ten year reoccurrence interval would be produced by a three-inch rainfall in a 24–hour period.

13. An outlet that would accommodate 51 c.f.s. would meet the requirements of the stream crossing standards that are contained in Article 89–14 of the North Dakota Administrative Code.

14. The culverts providing access into Richland County Drain # 65, located at the northwest corner of Section 13 of Waldo Township provide 100 c.f.s. of outlet for the surface water runoff migrating to the northeast corner of Section 13.

. . . .

18. The event complained of by [Eichhorn] was an overnight rain fall of some seven (7) to nine (9) inches in amount.

19. The event complained of by [Eichhorn] exceeded the 100–year flood event and could possibly have qualified as a 500–year flood event.

20. That the event complained of was a cataclysmic event.

[¶ 27] The district court concluded that although Eichhorn would like a larger culvert installed at the northeast corner of section 13, the two culverts providing access to Drain 65 already provide 100 cfs of outlet for the surface water runoff migrating to the northeast corner of section 13. The court further concluded that the Township and the District had met the surface water runoff requirements mandated by the statutory scheme.

[¶ 28] Eichhorn contends that the District's attempted intervention and its alleged attempt to "supplant" the Township goes against established precedent. Eichhorn argues the district court's conclusion that the Township and the District are engaged in a "joint operation" is not supported by this Court's opinion in *Burling-*

*ton Northern,* 2000 ND 182, 618 N.W.2d 155. *Burlington Northern,* however, is not controlling. That case involved an appeal from a water resource district's order requiring the installation of culverts through a township road and a railroad. *Id.* at ¶¶ 3–4. Under the circumstances of that case, this Court concluded, in part, the water resource district did not have authority to order a township to install a culvert. *Id.* at ¶ 9. Here, Eichhorn is not appealing from any order of the District, but is instead requesting a writ of mandamus to compel the Township to install a larger culvert. There is no evidence the District has ordered the Township to do or not to do anything. We have previously recognized our statutes envision cooperation between the Township and the District. *See Ness,* 1998 ND 191, ¶ 17, 585 N.W.2d 793. Here, we are not faced with circumstances in which a township and a water resource district are failing to cooperate. On the contrary, both the Township and the District are united in opposing Eichhorn's demand for a larger culvert at the northeast corner of section 13.

[¶ 29] In *Kadlec,* 1998 ND 165, ¶ 32, 583 N.W.2d 817, a case involving review of a grant of mandamus, we affirmed a district court judgment granting a landowner's request for a writ of mandamus directing the township board of supervisors to install a culvert through a township road adjacent to his land. In that case, the water resource district denied a request by a landowner and a township to place a culvert under a road, and on appeal, the case hinged on which entity had authority over installation of the culvert. *Id.* at ¶ 10. We held the township had a statutory duty to install a culvert to prevent the obstruction of the natural drainage of surface water, and the township, not the water resource district, had the supervisory authority to decide whether to put a culvert under the township road. *Id.* at ¶ 15. We

affirmed the district court decision granting a writ of mandamus, concluding the landowner had no other plain, speedy, and adequate remedy in the ordinary course of law. *Id.* at ¶¶ 26–27. In *Kadlec,* however, it was undisputed by the parties that there was no legal drain involved. *Id.* at ¶ 15.

[¶ 30] *Kadlec* does not control our resolution of this case. In *Kadlec,* only the water resource district, not the township, contested the district court's issuance of the writ. Furthermore, in *Kadlec,* this Court underscored the very "peculiar circumstances" of that case, including that Kadlec's and the township's efforts to install the culvert had been simply overridden by the water resource district, even though the water resource district was not authorized under law to make that decision. In this case, the district court denied Eichhorn's request for a writ of mandamus and specifically found that Drain 65 is affected, mandating the District's involvement. Here, unlike in *Kadlec,* both the Township and the District have opposed Eichhorn's efforts to have a larger culvert installed in the Township road, where the drainage area includes a legal drain.

[¶ 31] Eichhorn argues the District should not be involved in the Township's culvert decision, because the present culvert is not within the identified boundaries of Drain 65 and, despite the right-of-way deed conveying a two-acre tract of land to the south and west of the township roads, the lateral drain does not include any portion of the Township road, which is entirely located within the congressional section line recognized in N.D.C.C. § 24–07–03. Both the Township and the District, however, have maintained that the culvert in the northeast corner of section 13 is part of the lateral to Drain 65. The district court specifically found that the lateral drain extended one mile along the north

edge of section 13. There is evidence in the record to support this finding.

[¶ 32] The "Amended Order Establishing Drain" describes Drain 65 as: "including a Lateral to the main drainage ditch along the North (N) side of Section Thirteen (13), Township One Hundred Thirty (130), Range Forty-nine (49), a distance of one (1) mile." This description defines the lateral as extending the entire length of the section. There is statutory authority permitting a legal drain to be established along or within the limits of a township road. *See* N.D.C.C. §§ 61–16.1–42 and 61–21–31. At the November 2004 hearing, Damon DeVillers, a civil engineer with Interstate Engineering employed by the District, testified about the location and drainage area for Drain 65 and its lateral drain:

Q  Can you describe for the Court the location of that lateral?

A  In the north half of Section 13, T–130 North Range, 49 West.

. . . .

Q  In other words, the lateral is suppose to accommodate 10.0 square miles of drainage?

A  Correct.

. . . .

A  The second page has an approximate drainage area map showing the drainage area for Drain 65—for this lateral for Drain 65 and Drain 65, shows a location map of Drain 65, shows some more planted profile elevations, just shows the—

Q  Does it show the amount of excavation that would be estimated in that lateral?

A  Yes, it does.

Q  And how much material was to be excavated, if you can tell from those plans?

A  It shows excavation Lateral # 1, 18,312 cubic yards.

Q  Of material?

A  Correct.

Q  And that's to accomplish bringing the water from the northeast corner of 13 to Drain 65.

A  Correct.

. . . .

A  The dash line on the drainage area for Section 13 shows that it is approximately a thousand feet in from the northeast corner of Section 13 where the drainage area comes to. That does not show that the lateral ends at that point. The lateral itself—the stationing on the lateral itself is shown on sheet number one, which shows the lateral going all the way from the northwest corner in Drain 65 all the way to the northeast corner of Section 13. That's the length of lateral. When I talked about stationing, it shows the beginning of the lateral on the west end at station 1 + 00 and the one end of the lateral at the east end at station 53 + 00 is the section line.

[¶ 33] Randy Gjestvang, a water resource engineer for the State Water Commission, who conducted the investigation of the site to come up with the ten-year flow characteristics for section 13, explained his consideration of the lateral drain:

Q  And what did you find or determine, with your investigation, the area, that contributed to the northeast corner of Section 13, was in size?

A  9.4 square miles.

. . . .

Q  The 9.4 square miles that you talk about, can you give us an idea of how much of that was east of Drain 65?

A  East of Drain 65. Probably about three miles of it. Three square miles.

. . . .

Q  What—what were you able to determine about flow characteristics?

A  Flow characteristics, the 10–year flow in that area was what I determined was 51 cubic feet per second.

. . . .

Q  Did there come a time when you prepared a draft of a letter to be considered by the State Engineer and the regulatory division of the State Water Commission?

. . . .

A  Yes, I did prepare a draft of a letter.  I think it was probably in October of 2001.

. . . .

Q  (By Mr. Breitling) Mr. Gjestvang, I take it then that you did not report to the regulatory division or to Mr. Frink, the State Engineer, that the channel along the north edge of 13 was apart of Drain 65?

. . . .

A  I did not report that it was a lateral of Drain 65.

Q  That's because you didn't know that it was, true?

A  That's correct.

. . . .

Q  In other words, when the water that normally would go northeast is shut off in Drain 65 and forced north, as long as there's an outlet provided, that's not a violation of the stream crossing standards, true?

A  That is true.

Q  And that same example pertains to any opening existing now in the northeast corner of Section 13, true?

A  That is true.

[¶ 34]  Although Eichhorn attempts to challenge the description and boundaries of what is included in the lateral to Drain 65, the evidence presented to the district court establishes that the culvert is within the area of the lateral drain to Drain 65. Moreover, a request for mandamus requires Eichhorn to demonstrate a clear legal right to the relief requested and is not an appropriate proceeding to challenge the parameters and boundaries of a previously established drain.  *Cf. Kadlec*, 1998 ND 165, ¶¶ 34–36, 583 N.W.2d 817 (VandeWalle, C.J., concurring) (citing *Olson v. Cass County*, 253 N.W.2d 179 (N.D.1977), and discussing exhaustion of remedies requirement).

[¶ 35]  Eichhorn asserts that once the state engineer determined the stream crossing standards to be 51 cfs for the northeast corner of section 13, the Township was required to install a larger culvert. Eichhorn argues the existing culvert in the northeast part of section 13 does not provide sufficient drainage to meet the stream crossing standards specified by the state engineer in his November 2001 letter.  The district court, however, specifically found that the culverts leading into Drain 65 from the lateral provide sufficient drainage to meet the stream crossing standards.

[¶ 36]  Further, the court concluded the Township and the District were exercising their official discretion by refusing to mandate or install a larger culvert in the northeast portion of section 13 after determining Drain 65 and its lateral meet stream crossing standards.  The district court reasoned that although better drainage could be provided for section 13, the law did not require perfect drainage.  The court also found that the rain event, which Eichhorn claimed demonstrated the drainage problems and the failure to meet the stream crossing standards on his property, was a cataclysmic event, and in excess of a 100–year flood, not a 10–year event as contemplated by the stream crossing standards for a township road.  The court

therefore concluded that the statutory scheme did not mandate a culvert be installed.

[¶ 37] This case involves more than simply the interpretation of an unambiguous statute, but rather also involves the discretion and cooperation of the Township and the District in meeting the stream crossing standards as provided by the state engineer. The district court did not act arbitrarily, capriciously or unreasonably, nor did it misinterpret the law in denying Eichhorn's request for a writ of mandamus. We conclude Eichhorn failed to show a "clear legal right" requiring issuance of a writ of mandamus, and the court did not abuse its discretion in denying the petition.

[¶ 38] We conclude the district court's decision denying Eichhorn's petition for a writ of mandamus was not arbitrary, unreasonable, or capricious and was not a misapplication or misinterpretation of the law. Because considerable discretion lies within the Township and the District to address the water flow issues, Eichhorn has failed to demonstrate a clear legal right. We have also considered Eichhorn's other issues raised on appeal and conclude the district court properly dismissed Eichhorn's petition for a writ of mandamus.

## IV

[¶ 39] The district court order and judgment are affirmed.

[¶ 40] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.